■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL COLEMAN, Appellant. [791 NYS2d 112]—

Judgment, Supreme Court, New York County (Rena K. Uviller, J.), rendered April 3, 2002, convicting defendant, after a jury trial, of attempted assault in the first degree and assault in the second degree, and sentencing him to concurrent terms of four years and two years, respectively, unanimously affirmed.

The court properly admitted a tape of a 911 call placed by a distraught, unidentified caller, briefly describing an attack in progress against a man and a woman at a specified location. The 911 operator requested and obtained a description of the assailant, but otherwise only asked the caller to repeat information he had already volunteered.

We conclude that this evidence satisfied both the excited utterance (see People v Edwards, 47 NY2d 493, 497 [1979]) and present sense impression (see People v Brown, 80 NY2d 729 [1993]) exceptions to the hearsay rule. Defendant's principal appellate argument is that the 911 tape was "testimonial" under Crawford v Washington (541 US 36 [2004]) and thus violated his right of confrontation. We disagree.

In Crawford, the Court stated that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused" (541 US at 50), and held that the Sixth Amendment's Confrontation Clause bars "testimonial" statements of a nontestifying witness when the defendant did not have a prior opportunity for cross-examination. The Court declined to provide a precise definition of "testimonial" but held that statements taken by police officers in the course of interrogation are testimonial (id. at 53). Crawford repeatedly stresses the element of formality and reiterates that the Confrontation Clause was primarily directed at evidence bearing a resemblance to depositions and affidavits, even if unsworn (see People v Newland, 6 AD3d 330 [2004], lv denied 3 NY3d 679 [2004]). Given this emphasis, we find little

support in *Crawford* for the argument that virtually any report of criminal activity, knowingly made to the authorities, should be viewed as testimonial (*see* discussion of *Crawford* parameters in *Stancil v United States*, 866 A2d 799, 810-813 [DC App 2005]).

The information conveyed by the 911 caller was for the purpose of urgently seeking police intervention, and did not result from structured questioning (*see e.g. People v Conyers*, 4 Misc 3d 346 [2004]; *People v Moscat*, 3 Misc 3d 739 [2004]). There is no indication that the 911 operator followed any kind of protocol for obtaining information (*compare People v Cortes*, 4 Misc 3d 575 [2004]). The only significant question asked by the operator was a request for a description of the attacker, and we conclude that this question did not render the response testimonial, because it fell within a category that has been described as "questions delivered in emergency circumstances to help the police nab . . . assailants" (*Mungo v Duncan*, 393 F3d 327, 336 n 9 [2d Cir 2004]). Finally, to the extent that the declarant's motivation may be relevant under *Crawford*, we note that the caller repeatedly emphasized that one or both of the victims was "bleeding real bad." This indicates that his primary motivation was to call for urgent assistance, and not to phone in an anonymous accusation.

Defendant's generalized objection and vague request for a jury instruction failed to preserve any argument, including any constitutional argument, concerning the introduction of evidence that the officer who arrived at the scene took police action in response to particular statements made by unidentified bystanders, and we decline to review his present claim in the interest of justice. Were we to review this claim, we would find that the bystanders' declarations were not testimonial (*see People v Newland*, 6 AD3d 330 [2004], *supra*). In any event, were we to find any error in the receipt of this evidence or in the prosecutor's summation comments thereon, we would find it to be harmless in view of the overwhelming evidence of defendant's guilt. Concur—Tom, J.P., Andrias, Saxe, Friedman and Nardelli, JJ.