People v Cummings (2018 NY Slip Op 03306)

People v Cummings

2018 NY Slip Op 03306 [31 NY3d 204]

May 8, 2018

Wilson, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, June 27, 2018

[*1]

The People of the State of New York, Respondent,
v
Twanek Cummings, Appellant.

Argued March 28, 2018; decided May 8, 2018

People v Cummings, 145 AD3d 490, reversed.

{**31 NY3d at 206} OPINION OF THE COURT

Wilson, J.

Defendant Twanek Cummings appeals from an order of the Appellate Division affirming the trial court's decision to admit a statement, heard in the background of a 911 call and spoken by an unidentified person, under the excited utterance exception to the hearsay rule. Although we reject his argument that the law-of-the-case doctrine prevented the substitute Supreme Court Justice from revisiting the prior Justice's decision to exclude the statement, admission of the statement was error because the record contains no evidence from which a trier of fact could reasonably infer that the statement was based on the personal observation of the declarant. On the record here, we cannot conclude the error was harmless. Accordingly, we reverse the order of the Appellate Division and order a new trial.
On March 19, 2012, at about 2:28 p.m., three men—Messrs. Relaford, Phillips and Allen—were on the corner of 129th St. and St. Nicholas Terrace. A silver minivan drove past and double parked. The passenger exited, walked past the group, then turned around and pointed a gun at Mr. Relaford. The gunman shot Mr. Relaford in the hand and leg, Mr. Phillips in the leg, and Mr. Allen in the buttocks. The gunman briskly reentered the minivan, which sped off.
[*2]
The exact timing is disputed, but somewhere between 2:29 p.m. and 2:32 p.m., Mr. Phillips called 911. About 20 seconds{**31 NY3d at 207} into the call, someone in the background can be faintly heard saying, "Yo, it was Twanek, man! It was Twanek, man!" A woman in the assembled crowd provided the police with a partial license plate number for the minivan. An officer spotted and stopped a minivan matching the description and partial license plate a short distance from the crime scene, at which point both the driver and passenger exited the vehicle. The officer stayed with and arrested the driver, but the passenger—the suspected gunman—slipped away.
Mr. Cummings' fingerprint was subsequently found on the passenger door of the minivan, and cell site data is consistent with his presence in the area at the time of the shooting. The People assert that Mr. Cummings left the state soon after the shooting, returning a few days later. No weapon was recovered, and the shooting victims failed to identify Mr. Cummings in a lineup. Surveillance video shows someone running away from the scene and entering the minivan immediately after the shooting, and several people hurrying towards the scene moments later. The surveillance video does not show the scene of the shooting. Neither the shooter nor the person saying, "It was Twanek, man," can be identified from the video.
During Mr. Cummings' first trial, the People sought to admit the unidentified person's statement on the 911 call under the excited utterance exception to the hearsay rule. The court denied the application. The jury deadlocked, and the court declared a mistrial. The matter was to be retried before a different Supreme Court Justice in October 2013. That Justice also denied the People's application to admit the statement. She took ill after all but the alternate jurors were selected, and was replaced by another Supreme Court Justice. The People renewed their application to admit the statement, and the court allowed admission of the statement as an excited utterance. Mr. Cummings was tried and convicted of one count of assault in the first degree, two counts of attempted assault in the first degree, two counts of criminal possession of a weapon in the second degree, and two counts of assault in the second degree. He was acquitted of three counts of attempted murder.
On appeal, Mr. Cummings argued that the law-of-the-case doctrine barred the substitute Supreme Court Justice presiding over his second trial from reconsidering the prior Justice's decision to exclude the unidentified speaker's statement recorded in the background of the 911 call. He also argued that the ruling was incorrect, because there was no evidence from{**31 NY3d at 208} which to infer that the unidentified speaker personally observed the shooting. The Appellate Division rejected both arguments, and summarily stated that even if the admission of the statement was erroneous, it was harmless (145 AD3d 490, 491 [1st Dept 2016]). A Judge of this Court granted Mr. Cummings leave to appeal.
I. Law of the Case
Law of the case is "a judicially crafted policy that 'expresses the practice of courts generally to refuse to reopen what has been decided, [and is] not a limit to their power.' As such, law of the case is necessarily 'amorphous' in that it 'directs a court's discretion,' but does not restrict its authority" (People v Evans, 94 NY2d 499, 503 [2000] [citations omitted]). Law of the case does not apply to every judge or every ruling. Our cases applying law of the case have generally involved courts of coordinate jurisdiction (see id.; Matter of Dondi v Jones, 40 NY2d 8, 15 [1976]). Further, absent prejudice to the defendant, a judge may revisit his or her own evidentiary rulings during trial (see United States v Wade, 512 Fed Appx 11, 14 n 1 [2d Cir 2013] ["pre-trial evidentiary rulings may be revisited w(h)ere no prejudice accrues to the party that had previously thought it had secured a favorable ruling from the . . . court"]; cf. Aridas v Caserta, 41 NY2d 1059, 1061 [1977]). On retrial, evidentiary rulings may be reconsidered, but orders determining the result of a suppression hearing generally cannot (see Evans at 504-505; People v Malizia, 62 NY2d 755, 758 [1984]; People v Nieves, 67 NY2d 125, 136 [1986]).
 The decision to admit hearsay as an excited utterance is an evidentiary decision, "left to the sound judgment of the trial court" (People v Hernandez, 28 NY3d 1056, 1057 [2016]), and thus may be reconsidered on retrial (see Nieves at 136-137 [noting that a ruling on admissibility of evidence as excited utterance would not be binding in a subsequent trial]). There is no reason to apply a different rule to a [*3]successor judge within the same trial and we, therefore, have no basis to adopt a per se rule prohibiting a substitute judge from exercising independent discretion concerning an evidentiary trial ruling. To be sure, "the law of the case doctrine is designed to eliminate the inefficiency and disorder that would follow if courts of coordinate jurisdiction were free to overrule one another in an ongoing case" (Evans, 94 NY2d at 504). This, however, weighs against Mr. Cummings' argument that a substitute justice's{**31 NY3d at 209} discretionary reconsideration of a prior evidentiary ruling necessitates per se reversal (cf. Wright v Cayan, 817 F2d 999, 1002 n 3 [2d Cir 1987] ["it would be self-defeating to reverse a correct ruling by the second judge solely because of a departure from the law of the case"]). Accordingly, the substitute Justice was not bound by law of the case and acted within his discretion to revisit the evidentiary ruling (see Evans, 94 NY2d at 506).
Notably, Mr. Cummings does not contend that he lacked sufficient notice of, or had taken irremediable steps in reliance on, the ruling allowing the admission of the statement from the 911 call (see United States v Birney, 686 F2d 102, 107 [2d Cir 1982]). Where, as here, the evidentiary ruling was reversed before the jury was empaneled, absent a showing of prejudice resulting from, for example, a mid-trial reversal of an evidentiary ruling that impedes the defense strategy, we cannot say that an abuse of discretion occurred.

 II. Admissibility 
A "spontaneous declaration or excited utterance—made contemporaneously or immediately after a startling event—which asserts the circumstances of that occasion as observed by the declarant" is an exception to the prohibition on hearsay (People v Edwards, 47 NY2d 493, 496-497 [1979] [the declaration may be admitted into evidence "as expressing the true belief of the declarant as to the facts observed"]). "The admission of a hearsay statement under any exception deprives the defendant of the right to test the accuracy and trustworthiness of the statement by cross-examination" (People v Brown, 80 NY2d 729, 736 [1993]). Although hearsay, excited utterances may be admissible because, "as the impulsive and unreflecting responses of the declarant to the injury or other startling event, they possess a high degree of trustworthiness, and, as thus expressing the real tenor of said declarant's belief as to the facts just observed by him, may be received as testimony of those facts" (People v Caviness, 38 NY2d 227, 231 [1975] [emphasis added]). As we stated in People v Fratello: "To be sure, . . . it must be inferable that the declarant had an opportunity to observe personally the event described in the [spontaneous] declaration" (92 NY2d 565, 571 [1998] [emphasis added]). Direct observation by the person making the excited utterance ensures that the declarant is in fact reacting to and "assert[ing] the circumstances of" the event causing the excitement (Edwards, 47 NY2d at 496-497).
 {**31 NY3d at 210}The question presented is whether it is reasonably inferable from the circumstances that the unidentified speaker, heard in the background of the 911 call, personally observed the shooting. Both parties agree that this is a mixed question of law and fact, and thus, our inquiry is limited to whether there is record support for the admissibility ruling. There is none.
As we recognized in Fratello, "[i]n most instances, [the personal observation] requirement is satisfied self-evidently from the circumstances that the declarant was an actual participant in the event which is the subject of the declaration" (92 NY2d at 571). In Fratello, the declarant was the victim of a shooting, but the defendant challenged the admission of the victim's initial identification because the identification took place after "a nighttime attack during a high-speed car chase" (id.). We held it was reasonably inferable that the victim observed the shooter before identifying him as the defendant because the car chase occurred on a block with street lights, the victim was a close friend of the defendant, the victim accurately identified the type of car chasing him, and the victim testified that he observed one of the attackers in the rearview mirror sufficiently to describe his appearance.
Of course, the declarant need not be a victim or participant: bystander-declarants can make admissible excited utterances. For example, in People v Caviness, we held that a statement by a nonparticipant could be admitted as an excited utterance: "Assuming that the non-participant is shown to have had adequate opportunity to observe the event, there is no sound reason why his spontaneous exclamation should not be admitted, for the unexpected exciting event may just as effectively produce a natural and spontaneous declaration by a bystander as by a participant" (38 NY2d at 231-232). Under the circumstances present in that case—the "declarant's proximity to the occurrence, which furnished an adequate opportunity to observe, the professed shock, and the immediacy of the utterance following the event," as well as the fact that the declarant knew the shooter and victim, described what she saw when she testified at trial, and was subject to cross-examination—the excited utterance was admissible (id. at 232 [citations omitted]).
In contrast to Fratello and Caviness, the declarant here is unidentified. The People are correct that lack of identification of the declarant does not make an excited utterance inadmissible{**31 NY3d at 211} per se, but facts must exist from which a reasonable trier of fact could infer that the declarant personally observed the incident. In People v Brown, we held that an unidentified declarant's statement on a 911 call was an admissible present-sense impression (80 NY2d at 737). There, the caller was relaying to the 911 dispatcher his continuous, real-time observations of a burglary in process, describing what the two burglars were wearing, where they were, and the apprehension of one while the other was located on the roof. Those details were corroborated by the statements of police officers (id. at 736-737). Similarly, in People v Coleman (16 AD3d 254 [1st Dept 2005]), the Appellate Division permitted the admission of a statement made during a 911 call as both an excited utterance and a present-sense impression. In Coleman, the declarant was "describing an attack in progress against a man and a woman at a specified location" and "[t]he 911 operator requested and obtained a description of the assailant" (id. at 254.) Here, unlike in Brown and Coleman, the declarant's bare conclusory statement contained no basis from which personal knowledge can reasonably be inferred. Moreover, to the extent the People argue that the fingerprint Mr. Cummings left on the minivan "strongly corroborated" the unidentified declarant's statement that "It was Twanek," we are unpersuaded. Such proof does not help us determine whether the declarant personally observed the shooting or was passing on hearsay several times removed.
The People rely heavily on the fact that the call was close in time to the shooting, arguing that "for the declarant to have exclaimed from that corner so quickly, he had to have been either at the corner or extremely nearby when the shooting occurred." However, the video evidence shows that many people ran toward the site of the shooting just after the gunman turned the corner and entered the minivan. So, even if we accept the People's timeline,[FN*] numerous people arrived between the shooting and the statement on the call, and there is consequently no way to know whether the statement was made by someone who could see the assailant (who was wearing a hoodie, was not identifiable from the videos, and was not identified by the victims). Here, as the Supreme Court Justice who took ill concluded, there is "no way to know whether the declarant observed the incident first hand or whether someone else{**31 NY3d at 212} reported the facts to him and he was just parroting what he was told" (see Miller v Keating, 754 F2d 507, 511 [3d Cir 1985] ["The declarant might have been drawing a conclusion on the basis of what he saw as he approached the scene of the accident. He might have been hypothesizing or repeating what someone else had said"]). Because there is no evidence from which a reasonable inference can be drawn that the declarant personally observed the incident, admission of the statement heard in the background of the 911 call was error.
That error was not harmless. Here, the non-constitutional standard applies, because Mr. Cummings did not make a due process argument and concedes that the admission of the statement does not violate the Confrontation Clause. Under the non-constitutional standard, we ask whether proof of guilt was overwhelming, and whether there was no significant probability that the jury would have acquitted had the proscribed evidence not been introduced (see People v Kello, 96 NY2d 740, 744 [2001]; People v Crimmins, 36 NY2d 230, 231 [1975]). That standard is not met here.
[*4]The People's remaining evidence is not nearly as strong without the statement from the 911 call. The circumstantial evidence centers around Mr. Cummings' fingerprint on the exterior of the car door, the cell phone records that may place him in the area, and his out-of-state travel shortly after the shooting, presented as consciousness of guilt. However, no one—victim or bystander—identified Mr. Cummings as the shooter, even though the victims gave a physical description. That fact distinguishes this case from People v Kello (96 NY2d at 744). There, we held that wrongful admission of hearsay as a present-sense impression was harmless under the non-constitutional standard; however, in Kello, two eyewitnesses "unequivocal[ly]" identified the defendant, and thus, "at most, the tapes [recording the present-sense impression] weakly confirmed the two eyewitnesses' testimony" (id.). Here, the unidentified declarant's statement is the only identification evidence. The cell phone records are not precise as to location, and not determinative of criminality; in fact, the cell phone evidence indicates that Mr. Cummings called the driver at 2:36 p.m., which the People admit would be inconsistent with Mr. Cummings' presence in the minivan unless the call was accidental. Those pieces of evidence together were not so powerful as to make the unidentified speaker's claim, "Yo, it was Twanek, man," unimportant.
{**31 NY3d at 213}The People's "heavy reliance" on the statement during summation underscores its importance (People v Hardy, 4 NY3d 192, 199 [2005]). The People opened the summation by playing the call, and saying:
"An individual's voice was captured in the recording you just heard in the 911 call, and it declared in that particular way it was Twanek, it was Twanek, on the heels of the shooting. Now, that person unequivocally identified the defendant, Twanek Cummings, to you, by his very uncommon first name, more than once and emphatically right after the shooting, and his certainty and his sincerity was clear. After all, you heard it. It was captured in real time as it was said. This is on the scene, evidence of not only the identification of the defendant, Twanek Cummings, as the perpetrator of the shooting, but it's also direct evidence of how the statement was made and how the identification of the defendant was made right there on the street, precisely what was said and also exactly how it was said in the moment."
The People continued to reference the statement several times throughout summation to corroborate other evidence, and ended the summation by playing the call a final time. Based on the evidence presented at trial, there was a "significant probability" that "had it not been for the error[ ] which occurred, this jury or a third would have acquitted the defendant" (Crimmins, 36 NY2d at 231).
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

Rivera, J. (concurring). Defendant Twanek Cummings appeals his conviction on the basis that the trial court erroneously admitted a 911 call under the excited utterance exception to the hearsay rule. The justification for this exception, while longstanding, warrants serious reconsideration.
"Excited utterances," statements "made contemporaneously or immediately after a startling event which affected or was observed by the declarant, and relate to the event," are an exception to federal and state evidentiary rules against hearsay (see People v Nieves, 67 NY2d 125, 135 [1986]; People v Fratello, 92 NY2d 565 [1998]). "The essential element of the exception is that the declarant spoke while under the stress or influence{**31 NY3d at 214} of the excitement caused by the event, so that [their] reflective capacity was stilled" (Nieves, 67 NY2d at 135). The exception's rationale posits that when a "declarant is exposed to a startling or upsetting event that is sufficiently powerful to render [their] normal reflective processes inoperative" (People v Cantave, 21 NY3d 374, 381 [2013] [internal quotation marks and citation omitted]), the resulting statement could "not [be] the product of studied reflection and[/or] possible fabrication" (People v Johnson, 1 NY3d 302, 306 [2003]). "The spontaneity of the declaration guarantees its trustworthiness and reliability" (Cantave, 21 NY3d at 381).
Legal scholars and jurists have questioned the continued vitality of this exception, in light of advances in psychology and neuroscience that demonstrate an individual's inability to accurately recall facts when experiencing trauma, and, in turn, to create falsehoods immediately. For example, the Seventh Circuit has stated that, "[a]s with much of the folk psychology of evidence, it is difficult to take this rationale [that immediacy negates the likelihood of fabrication] entirely seriously, since people are entirely capable of spontaneous lies in emotional circumstances. Old and new studies agree that less than one second is required to fabricate a lie" (Lust v Sealy, Inc., 383 F3d 580, 588 [7th Cir 2004] [internal quotation marks and citation omitted]). Circuit Judge Posner has explained pointedly the weak foundation for this exception:
"The [Federal Rules of Evidence] Advisory Committee Notes provide an even less convincing justification for . . . the 'excited utterance' rule. The proffered justification is 'simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication.' The two words I've italicized drain the attempted justification of any content. And even if a person is so excited by something that [they] lose[ ] the capacity for reflection (which doubtless does happen), how can there be any confidence that [their] unreflective utterance, provoked by excitement, is reliable? . . .
"As pointed out in the passage that the majority opinion quotes from the McCormick treatise, 'The entire basis for the [excited utterance] exception may . . . be questioned. While psychologists would {**31 NY3d at 215}probably concede that excitement minimizes the possibility of reflective self-interest influencing the declarant's statements, they have questioned whether this might be outweighed by the distorting effect of shock and excitement upon the declarant's observation and judgement.'
"The Advisory Committee Notes go on to say that while the excited utterance exception has been criticized, 'it finds support in cases without number.' I find that less than reassuring. Like the exception for present sense impressions, the exception for excited utterances rests on no firmer ground than judicial habit, in turn reflecting judicial incuriosity and reluctance to reconsider ancient dogmas" (United States v Boyce, 742 F3d 792, 801-802 [7th Cir 2014, Posner, J., concurring] [citations omitted]; see also Steven Baicker-McKee, The Excited Utterance Paradox, 41 Seattle U L Rev 111, 114 [2017] ["Psychological studies suggest that stressful events trigger the '(fight)-or-flight' response, and that deceptive statements are not only possible, they can be a natural component . . . . A traumatic event dramatically increases cognitive load, leading to perception deficits and distortions. Thus, excited witness perceptions tend to be unreliable for many reasons"]; Melissa Hamilton, The Reliability of Assault Victims' Immediate Accounts: Evidence from Trauma Studies, 26 Stan L & Pol'y Rev 269, 304 [2015] ["Evidence law's entrenchment in a precedential schematic relying upon longstanding tradition as [*5]proving any rule's validity is unfortunate in light of advances in scientific knowledge concerning human cognitions, physiological functioning, psychological experiences, and purposeful actions"]).
It appears that only tenuous support exists for the proposition that a declarant's event-concurrent statements should evade traditional evidentiary requirements, and thus for this judicially-created "excited utterance" exception. Science, fact, and common sense suggest that we should cabin, if not outright abandon, the exception. Certainly, "judicial habit, in turn reflecting judicial incuriosity and reluctance to reconsider ancient dogmas" (Boyce, 742 F3d at 802 [Posner, J., concurring]) is no reason to guard this exception so tightly, especially{**31 NY3d at 216} in the face of criticism stemming from an informed understanding of human cognitive behavior.
Nevertheless, because defendant does not challenge the premise of the "excited utterance" exception, instead confining his analysis to traditional notions of existing hearsay rules, I am compelled to consider his appeal on those terms, rather than reverse on the basis that the exception should be rejected whole cloth. Thus, regarding the present claim as limited by defendant, and on constraint of our prior case law, I agree for the reasons set forth by the majority that the Appellate Division should be reversed.
Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Garcia and Feinman concur; Judge Rivera in a concurring opinion.
Order reversed and a new trial ordered.

Footnotes

Footnote *:The People repeatedly told Supreme Court that the 911 call was within three minutes of the shooting, with the call beginning at 2:32 p.m., but eventually claimed that the call occurred at 2:29 p.m.