WILSON, J.
Defendant Twanek Cummings appeals from an order of the Appellate Division affirming the trial court's decision to admit a statement, heard in the background of a 911 call and spoken by an unidentified person, under the excited utterance exception to the hearsay rule. Although we reject his argument that the law-of-the-case doctrine prevented the substitute Supreme Court Justice from revisiting the prior Justice's decision to exclude the statement, admission of the statement was error because the record contains no evidence from which a trier of fact could reasonably infer that the statement was based on the personal observation of the declarant. On the record here, we cannot conclude the error was harmless. Accordingly, we reverse the order of the Appellate Division and order a new trial.
On March 19, 2012, at about 2:28 p.m., three men-Messrs. Relaford, Phillips and Allen-were on the corner of 129th St. and St. Nicholas Terrace. A silver minivan drove past and double parked. The passenger exited, walked past the group, then turned around and pointed a gun at Mr. Relaford. The gunman shot Mr. Relaford in the hand and leg, Mr. Phillips in the leg, and Mr. Allen in the buttocks. The gunman briskly reentered the minivan, which sped off.
The exact timing is disputed, but somewhere between 2:29 p.m. and 2:32 p.m., Mr. Phillips called 911. About 20 seconds ***207 into the call, someone in the background can be faintly heard saying, "Yo, it was Twanek, man! It was Twanek, man!" A woman in the assembled crowd provided the police with a partial license plate number for the minivan. An officer spotted and stopped a minivan matching the description and partial license plate a short distance from the crime scene, at which point both the driver and passenger exited the vehicle. The officer stayed with and *880 arrested the driver, but the passenger-the suspected gunman-slipped away. **487 Mr. Cummings' fingerprint was subsequently found on the passenger door of the minivan, and cell site data is consistent with his presence in the area at the time of the shooting. The People assert that Mr. Cummings left the state soon after the shooting, returning a few days later. No weapon was recovered, and the shooting victims failed to identify Mr. Cummings in a lineup. Surveillance video shows someone running away from the scene and entering the minivan immediately after the shooting, and several people hurrying towards the scene moments later. The surveillance video does not show the scene of the shooting. Neither the shooter nor the person saying, "It was Twanek, man," can be identified from the video.
During Mr. Cummings' first trial, the People sought to admit the unidentified person's statement on the 911 call under the excited utterance exception to the hearsay rule. The court denied the application. The jury deadlocked, and the court declared a mistrial. The matter was to be retried before a different Supreme Court Justice in October 2013. That Justice also denied the People's application to admit the statement. She took ill after all but the alternate jurors were selected, and was replaced by another Supreme Court Justice. The People renewed their application to admit the statement, and the court allowed admission of the statement as an excited utterance. Mr. Cummings was tried and convicted of one count of assault in the first degree, two counts of attempted assault in the first degree, two count of criminal possession of a weapon in the second degree, and assault in the second degree. He was acquitted of three counts of attempted murder.
On appeal, Mr. Cummings argued that the law-of-the-case doctrine barred the substitute Supreme Court Justice presiding over his second trial from reconsidering the prior Justice's decision to exclude the unidentified speaker's statement recorded in the background of the 911 call. He also argued that the ruling was incorrect, because there was no evidence from ***208 which to infer that the unidentified speaker personally observed the shooting. The Appellate Division rejected both arguments, and summarily stated that even if the admission of the statement was erroneous, it was harmless ( 145 A.D.3d 490, 491, 43 N.Y.S.3d 293 [1st Dept. 2016] ). A Judge of this Court granted Mr. Cummings leave to appeal.
I. Law of the Case
Law of the case is "a judicially crafted policy that 'expresses the practice of courts generally to refuse to reopen what has been decided, [and is] not a limit to their power'. As such, law of the case is necessarily 'amorphous' in that it 'directs a court's discretion,' but does not restrict its authority" ( People v. Evans, 94 N.Y.2d 499, 503, 706 N.Y.S.2d 678, 727 N.E.2d 1232 [2000] [citations omitted] ). Law of the case does not apply to every judge or every ruling. Our cases applying law of the case have generally involved courts of coordinate jurisdiction (see id. ; Dondi v. Jones, 40 N.Y.2d 8, 15, 386 N.Y.S.2d 4, 351 N.E.2d 650 [1976] ). Further, absent prejudice to the defendant, a judge may revisit his or her own evidentiary rulings during trial (see United States v. Wade, 512 Fed.Appx. 11, 14 n.1 [2d Cir.2013] ["pre-trial evidentiary rulings may be revisited w(h)ere no prejudice accrues to the party that had previously thought it had secured a favorable ruling from the ... court"]; cf. Aridas v. Caserta, 41 N.Y.2d 1059, 1061, 396 N.Y.S.2d 170, 364 N.E.2d 835 [1977] ). On retrial, evidentiary rulings may be reconsidered, but orders determining the result of a suppression hearing generally *881 cannot (see Evans at 504-505, 706 N.Y.S.2d 678, 727 N.E.2d 1232 ; **488 People v. Malizia, 62 N.Y.2d 755, 758, 476 N.Y.S.2d 825, 465 N.E.2d 364 [1984] ; People v. Nieves, 67 N.Y.2d 125, 136, 501 N.Y.S.2d 1, 492 N.E.2d 109 [1986] ).
The decision to admit hearsay as an excited utterance is an evidentiary decision, "left to the sound judgment of the trial court" ( People v. Hernandez, 28 NY3d 1056, 1057, 65 N.E.3d 1272 [2016] ), and thus may be reconsidered on retrial (see Nieves at 136-137, 501 N.Y.S.2d 1, 492 N.E.2d 109 [noting that a ruling on admissibility of evidence as excited utterance would not be binding in a subsequent trial] ). There is no reason to apply a different rule to a successor judge within the same trial and we, therefore, have no basis to adopt a per se rule prohibiting a substitute judge from exercising independent discretion concerning an evidentiary trial ruling. To be sure, "the law of the case doctrine is designed to eliminate the inefficiency and disorder that would follow if courts of coordinate jurisdiction were free to overrule one another in an ongoing case" ( Evans, 94 N.Y.2d at 504, 706 N.Y.S.2d 678, 727 N.E.2d 1232 ). This, however, weighs against Mr. Cummings' argument that a substitute justice's ***209 discretionary reconsideration of a prior evidentiary ruling necessitates per se reversal (cf. Wright v. Cayan, 817 F.2d 999, 1002 n. 3 [2d Cir. 1987] ["it would be self-defeating to reverse a correct ruling by the second judge solely because of a departure from the law of the case"] ). Accordingly, the substitute Justice was not bound by law of the case and acted within his discretion to revisit the evidentiary ruling (see Evans, 94 N.Y.2d at 506, 706 N.Y.S.2d 678, 727 N.E.2d 1232 ).
Notably, Mr. Cummings does not contend that he lacked sufficient notice of, or had taken irremediable steps in reliance on, the ruling allowing the admission of the statement from the 911 call (see United States v. Birney, 686 F.2d 102, 107 [2d Cir.1982] ). Where, as here, the evidentiary ruling was reversed before the jury was empaneled, absent a showing of prejudice resulting from, for example, a mid-trial reversal of an evidentiary ruling that impedes the defense strategy, we cannot say that an abuse of discretion occurred.
II. Admissibility
A "spontaneous declaration or excited utterance-made contemporaneously or immediately after a startling event-which asserts the circumstances of that occasion as observed by the declarant" is an exception to the prohibition on hearsay ( People v. Edwards, 47 N.Y.2d 493, 496-497, 419 N.Y.S.2d 45, 392 N.E.2d 1229 [1979] [the declaration may be admitted into evidence "as expressing the true belief of the declarant as to the facts observed"] ). "The admission of a hearsay statement under any exception deprives the defendant of the right to test the accuracy and trustworthiness of the statement by cross-examination" ( People v. Brown, 80 N.Y.2d 729, 736, 594 N.Y.S.2d 696, 610 N.E.2d 369 [1993] ). Although hearsay, excited utterances may be admissible because, "as the impulsive and unreflecting responses of the declarant to the injury or other startling event, they possess a high degree of trustworthiness, and, as thus expressing the real tenor of said declarant's belief as to the facts just observed by him, may be received as testimony of those facts" ( People v. Caviness, 38 N.Y.2d 227, 231, 379 N.Y.S.2d 695, 342 N.E.2d 496 [1975] [emphasis added] ). As we stated in People v. Fratello: "To be sure, ... it must be inferable that the declarant had an opportunity to observe personally the event described in the [spontaneous] declaration" ( 92 N.Y.2d 565, 571, 684 N.Y.S.2d 149, 706 N.E.2d 1173 [1998] [emphasis *882 added] ). Direct observation by the person making the excited utterance ensures **489 that the declarant is in fact reacting to and "assert[ing] the circumstances of" the event causing the excitement ( Edwards, 47 N.Y.2d at 496-497, 419 N.Y.S.2d 45, 392 N.E.2d 1229 ). ***210 The question presented is whether it is reasonably inferable from the circumstances that the unidentified speaker, heard in the background of the 911 call, personally observed the shooting. Both parties agree that this is a mixed question of law and fact, and thus, our inquiry is limited to whether there is record support for the admissibility ruling. There is none.
As we recognized in Fratello, "[i]n most instances, [the personal observation] requirement is satisfied self-evidently from the circumstances that the declarant was an actual participant in the event which is the subject of the declaration" ( 92 N.Y.2d at 571, 684 N.Y.S.2d 149, 706 N.E.2d 1173 ). In Fratello, the declarant was the victim of a shooting, but the defendant challenged the admission of the victim's initial identification because the identification took place after "a nighttime attack during a high-speed car chase" ( id. ). We held it was reasonably inferable that the victim observed the shooter before identifying him as the defendant because the car chase occurred on a block with street lights, the victim was a close friend of the defendant, the victim accurately identified the type of car chasing him, and the victim testified that he observed one of the attackers in the rearview mirror sufficiently to describe his appearance.
Of course, the declarant need not be a victim or participant: bystander-declarants can make admissible excited utterances. For example, in People v. Caviness, we held that a statement by a nonparticipant could be admitted as an excited utterance: "Assuming that the non-participant is shown to have had adequate opportunity to observe the event, there is no sound reason why his spontaneous exclamation should not be admitted, for the unexpected exciting event may just as effectively produce a natural and spontaneous declaration by a bystander as by a participant" ( 38 N.Y.2d at 231-232, 379 N.Y.S.2d 695, 342 N.E.2d 496 ). Under the circumstances present in that case-the "declarant's proximity to the occurrence, which furnished an adequate opportunity to observe, the professed shock, and the immediacy of the utterance following the event," as well as the fact that the declarant knew the shooter and victim, described what she saw when she testified at trial, and was subject to cross-examination-the excited utterance was admissible ( id. at 232, 379 N.Y.S.2d 695, 342 N.E.2d 496 [citations omitted] ).
In contrast to Fratello and Caviness, the declarant here is unidentified. The People are correct that lack of identification of the declarant does not make an excited utterance inadmissible ***211 per se, but facts must exist from which a reasonable trier of fact could infer that the declarant personally observed the incident. In People v. Brown, we held that an unidentified declarant's statement on a 911 call was an admissible present-sense impression ( 80 N.Y.2d at 737, 594 N.Y.S.2d 696, 610 N.E.2d 369 ). There, the caller was relaying to the 911 dispatcher his continuous, real-time observations of a burglary in process, describing what the two burglars were wearing, where they were, and the apprehension of one while the other was located on the roof. Those details were corroborated by the statements of police officers ( id. at 736-737, 594 N.Y.S.2d 696, 610 N.E.2d 369 ). Similarly, in *883 People v. Coleman, 16 A.D.3d 254, 791 N.Y.S.2d 112 [1st Dept. 2005] ), the Appellate Division permitted the admission of a statement **490 made during a 911 call as both an excited utterance and a present-sense impression. In Coleman, the declarant was "describing an attack in progress against a man and a woman at a specified location" and "the 911 operator requested and obtained a description of the assailant" ( id . at 254, 791 N.Y.S.2d 112.) Here, unlike in Brown and Coleman, the declarant's bare conclusory statement contained no basis from which personal knowledge can reasonably be inferred. Moreover, to the extent the People argue that the fingerprint Mr. Cummings left on the minivan "strongly corroborated" the unidentified declarant's statement that "It was Twanek," we are unpersuaded. Such proof does not help us determine whether the declarant personally observed the shooting or was passing on hearsay several times removed.
The People rely heavily on the fact that the call was close in time to the shooting, arguing that "for the declarant to have exclaimed from that corner so quickly, he had to have been either at the corner or extremely nearby when the shooting occurred." However, the video evidence shows that many people ran toward the site of the shooting just after the gunman turned the corner and entered the minivan. So, even if we accept the People's timeline,* numerous people arrived between the shooting and the statement on the call, and there is consequently no way to know whether the statement was made by someone who could see the assailant (who was wearing a hoodie, was not identifiable from the videos, and was not identified by the victims). Here, as the Supreme Court Justice who took ill concluded, there is "no way to know whether the declarant observed the incident first hand or whether someone else ***212 reported the facts to him and he was just parroting what he was told" (see Miller v. Keating, 754 F.2d 507, 511 [3d Cir.1985] ["The declarant might have been drawing a conclusion on the basis of what he saw as he approached the scene of the accident. He might have been hypothesizing or repeating what someone else had said."] ). Because there is no evidence from which a reasonable inference can be drawn that the declarant personally observed the incident, admission of the statement heard in the background of the 911 call was error.
That error was not harmless. Here, the non-constitutional standard applies, because Mr. Cummings did not make a due process argument and concedes that the admission of the statement does not violate the Confrontation Clause. Under the non-constitutional standard, we ask whether proof of guilt was overwhelming, and whether there was no significant probability that the jury would have acquitted had the proscribed evidence not been introduced (see People v. Kello, 96 N.Y.2d 740, 744, 723 N.Y.S.2d 111, 746 N.E.2d 166 [2001] ; People v. Crimmins, 36 N.Y.2d 230, 231, 367 N.Y.S.2d 213, 326 N.E.2d 787 [1975] ). That standard is not met here.
The People's remaining evidence is not nearly as strong without the statement from the 911 call. The circumstantial evidence centers around Mr. Cummings' fingerprint on the exterior of the car door, the cell phone records that may place him in the area, and his out-of-state travel shortly after the shooting, presented as consciousness of guilt. However, no one-victim or bystander-identified Mr. Cummings *884 as the shooter, even though the victims gave a physical description. That fact distinguishes this case from **491 People v. Kello, 96 N.Y.2d at 744, 723 N.Y.S.2d 111, 746 N.E.2d 166 ). There, we held that wrongful admission of hearsay as a present-sense impression was harmless under the non-constitutional standard; however, in Kello, two eyewitnesses "unequivocal[ly]" identified the defendant, and thus, "at most, the tapes [recording the present-sense impression] weakly confirmed the two eyewitnesses' testimony" ( id. ). Here, the unidentified declarant's statement is the only identification evidence. The cell phone records are not precise as to location, and not determinative of criminality; in fact, the cell phone evidence indicates that Mr. Cummings called the driver at 2:36 p.m., which the People admit would be inconsistent with Mr. Cummings' presence in the minivan unless the call was accidental. Those pieces of evidence together were not so powerful as to make the unidentified speaker's claim, "Yo, it was Twanek, man," unimportant. ***213 The People's "heavy reliance" on the statement during summation underscores its importance ( People v. Hardy, 4 N.Y.3d 192, 199, 791 N.Y.S.2d 513, 824 N.E.2d 953 [2005] ). The People opened the summation by playing the call, and saying:
"An individual's voice was captured in the recording you just heard in the 911 call, and it declared in that particular way it was Twanek, it was Twanek, on the heels of the shooting. Now, that person unequivocally identified the defendant, Twanek Cummings, to you, by his very uncommon first name, more than once and emphatically right after the shooting, and his certainty and his sincerity was clear. After all, you heard it. It was captured in real time as it was said. This is on the scene, evidence of not only the identification of the defendant, Twanek Cummings, as the perpetrator of the shooting, but it's also direct evidence of how the statement was made and how the identification of the defendant was made right there on the street, precisely what was said and also exactly how it was said in the moment."
The People continued to reference the statement several times throughout summation to corroborate other evidence, and ended the summation by playing the call a final time. Based on the evidence presented at trial, there was a "significant probability" that "had it not been for the error[ ] which occurred, this jury or a third would have acquitted the defendant" ( Crimmins, 36 N.Y.2d at 231, 367 N.Y.S.2d 213, 326 N.E.2d 787 ).
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

The People repeatedly told Supreme Court that the 911 call was within three minutes of the shooting, with the call beginning at 2:32 p.m., but eventually claimed that the call occurred at 2:29 p.m.