People v Smith (2019 NY Slip Op 02911)

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}

People v Smith

2019 NY Slip Op 02911

Decided on April 17, 2019

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 17, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department
MARK C. DILLON, J.P.
LEONARD B. AUSTIN
ROBERT J. MILLER
COLLEEN D. DUFFY, JJ.


2016-01760
(Ind. No. 1699/14)

[*1]The People of the State of New York, respondent,
vShannon Smith, appellant.

Daniel Guttmann, Smithtown, NY, for appellant.
Richard A. Brown, District Attorney, Kew Gardens, NY (John M. Castellano, Johnnette Traill, Joseph N. Ferdenzi, and Christopher J. Blira-Koessler of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Michael Aloise, J.), rendered January 11, 2016, convicting him of attempted murder in the second degree (two counts), assault in the first degree (two counts), criminal possession of a weapon in the second degree, reckless endangerment in the first degree, criminal possession of a weapon in the third degree, and resisting arrest, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is affirmed.
The charges against the defendant arose from a shooting in Astoria, Queens, that occurred on July 3, 2014. One victim was shot in his arm, back, and leg, and a second victim, who was 15 years old at that time, was shot in the shoulder. After a brief car chase, the police, who had been in the vicinity at the time of the shooting, apprehended the defendant. The father of the 15-year-old victim, who had witnessed the shooting, identified the defendant as the shooter. When the defendant was arrested, he had a gun which later tests revealed matched the ballistics evidence collected at the scene of the shooting. After a jury trial, the defendant was convicted of attempted murder in the second degree (two counts), assault in the first degree (two counts), criminal possession of a weapon in the second degree, reckless endangerment in the first degree, criminal possession of a weapon in the third degree, and resisting arrest.
The defendant contends that his convictions were against the weight of the evidence. In fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342, 348), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Romero, 7 NY3d 633, 643-644; People v Mateo, 2 NY3d 383). Upon reviewing the record, we are satisfied that the verdicts of guilt were not against the weight of the evidence (see People v Romero, 7 NY3d at 643-644; People v Spratley, 159 AD3d 725, 731; People v Jones, 139 AD3d 878).
We agree with the Supreme Court's determination allowing the admission of a recording of a call to the 911 emergency number made by the father of the then-15-year-old victim. [*2]The record established that the declarant made the call within seconds of the shooting after his son cried out that he had been shot, and the father saw his neighbor, who was also shot and who the father thought was dying, fall to the ground in a pool of blood. Although the declarant's statements to the 911 operator were hearsay, they were nevertheless admissible under the exception for excited utterances " made contemporaneously or immediately after a startling event'" (People v Cummings, 31 NY3d 204, 209, quoting People v Edwards, 47 NY2d 493, 496-497; see People v Hernandez, 28 NY3d 1056, 1057) or present sense impressions made while he was "perceiving the event as it is unfolding or immediately afterward" which are "corroborated by independent evidence establishing [their] reliability" (People v Cantave, 21 NY3d 374, 382; see People v Jones, 28 NY3d 1037, 1038). Accordingly, we agree with the court's determination that the recording was admissible as an excited utterance and/or a present sense impression (see People v Martinez, 164 AD3d 1260, 1263; People v Wisdom, 164 AD3d 928, 930-931; People v Barnett, 163 AD3d 700, 703).
The defendant contends that the late disclosure of a recording of a 911 call made by an unidentified female declarant constituted a Brady violation (see Brady v Maryland, 373 US 83), and that the Supreme Court should have admitted the phone call into evidence. These contentions are without merit. " To establish a Brady violation, a defendant must show that (1) the evidence is favorable to the defendant because it is either exculpatory or impeaching in nature; (2) the evidence was suppressed by the prosecution; and (3) prejudice arose because the suppressed evidence was material'" (People v Hayes, 17 NY3d 46, 50, quoting People v Fuentes, 12 NY3d 259, 263; see People v Spruill, 164 AD3d 1270). The recording of the 911 call made by the unidentified female declarant was disclosed to defense counsel 12 days before the court began taking testimony and, in any event, the contents of the call were inadmissible hearsay, as there was no evidence that the declarant personally observed the incident (see People v Cummings, 31 NY3d at 209). Accordingly, the defendant cannot establish either that the People suppressed the evidence or that, even if it was suppressed, that suppression resulted in any prejudice to him.
The defendant's contention that he was not permitted to present evidence and argument at the Sandoval hearing (see People v Sandoval, 34 NY2d 371) is unpreserved for appellate review and, in any event, is not supported by the record (see People v Jackson, 29 NY3d 18, 22; People v Barnett, 163 AD3d 700, 701-702). Moreover, the Sandoval compromise adopted by the Supreme Court was not improper (see People v Jackson, 29 NY3d at 21, 23; People v Smith, 18 NY3d 588, 597-598; People v Ragland, 136 AD3d 845).
To the extent that the Supreme Court should not have allowed the father of the 15-year-old victim to testify that, at the time of the shooting, he and his son were waiting for a taxi to take them to inform other family members of the death of their father/grandfather, on the ground that this information would tend to evoke sympathy from the jury, that prejudice was either dispelled by the court's instructions to the jury or was harmless in light of the overwhelming evidence of the defendant's guilt and the absence of any significant probability that any error contributed to his conviction (see People v Cherry, 163 AD3d 706, 707; People v Crimmins, 36 NY2d 230, 237).
The defendant's contention that he was deprived of a fair trial due to improper remarks made by the prosecutor during summation is partially unpreserved for appellate review (see CPL 470.05[2]; People v Romero, 7 NY3d 911, 912; People v Wisdom, 164 AD3d at 930; People v Herrera, 161 AD3d 1006; People v Bethea, 159 AD3d 710, 712). In any event, to the extent that some of the challenged remarks were improper, those remarks did not deprive the defendant of a fair trial (see People v Wisdom, 164 AD3d at 931; People v Megnath, 164 AD3d 834, 836; People v Wilson, 163 AD3d 881, 882).
The defendant contends that the imposition of consecutive sentences for the two counts of attempted murder in the second degree was illegal and that the sentence imposed was excessive. Pursuant to Penal Law § 70.25, " sentences imposed for two or more offenses may not run consecutively: (1) where a single act constitutes two offenses, or (2) where a single act constitutes one of the offenses and a material element of the other'" (People v McKnight, 16 NY3d 43, 47, quoting People v Laureano, 87 NY2d 640, 643; see People v Brahney, 29 NY3d 10, 14; People v Couser, 28 NY3d 368, 375; People v Rodriguez, 25 NY3d 238, 244; People v Wright, 19 [*3]NY3d 359, 363). In determining whether consecutive sentences are permissible, " the sentencing court must first examine the statutory definitions of the crimes for which defendant has been convicted,'" focusing on the " act or omission'" that makes up each crime (People v McKnight, 16 NY3d at 48, quoting People v Laureano, 87 NY2d at 643; see People v Brahney, 29 NY3d at 14; People v Couser, 28 NY3d at 375; People v Rodriguez, 25 NY3d at 244; People v Wright, 19 NY3d at 363). "Consecutive sentences can still be imposed where there is some overlap in the elements of multiple statutory offenses if the People can demonstrate that the acts or omissions committed by defendant were separate and distinct acts," but where the act or omission is "a single inseparable act that violates more than one statute, [a] single punishment must be imposed" (People v Frazier, 16 NY3d 36, 41 [internal quotation marks omitted]; see People v Brahney, 29 NY3d at 14-15; People v Couser, 28 NY3d at 376; People v Rodriguez, 25 NY3d at 244; People v Wright, 19 NY3d at 364; People v McKnight, 16 NY3d at 48).
Here, the defendant fired multiple shots with the intent of hitting the older victim and one of those shots hit the 15-year-old victim. However, "[t]he test is not whether the criminal intent is one and the same and inspiring the whole transaction, but whether separate acts have been committed with the requisite criminal intent" (People v McKnight, 16 NY3d at 49 [internal quotation marks omitted]). The shots which hit the two victims "were the result of separate and distinct acts of pulling a trigger to discharge a firearm" and "repetitive discrete acts, such as successive shots . . . [do not] somehow merge such that they lose their individual character where the same criminal intent . . . inspir[es] the whole transaction" (id. [internal quotation marks omitted]). Accordingly, the imposition of consecutive sentences for the two counts of attempted murder in the second degree was legal. Moreover, the sentence imposed was not excessive (see People v Suitte, 90 AD2d 80).
The defendant's remaining contentions are unpreserved for appellate review and, in any event, without merit.
DILLON, J.P., AUSTIN, MILLER and DUFFY, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court