People v Vargas (2022 NY Slip Op 07460)

People v Vargas

2022 NY Slip Op 07460

Decided on December 28, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 28, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
JOSEPH A. ZAYAS
DEBORAH A. DOWLING
LILLIAN WAN, JJ.

2017-13422
 (Ind. No. 19/16)

[*1]The People of the State of New York, respondent,
v
Nolberto Contreras Vargas, appellant.

Patricia Pazner, New York, NY (Anna Jouravleva of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Roni C. Piplani, and Joseph M. DiPietro of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Deborah Stevens Modica, J.), rendered November 17, 2017, convicting him of assault in the first degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the law, and a new trial is ordered.
The defendant was charged with attempted murder in the second degree and assault in the first degree after allegedly stabbing his wife (hereinafter the victim) in the chest with a knife at their residence in the presence of their adult daughter (hereinafter the daughter). During the defendant's trial, the victim and the daughter did not testify, and the People did not call any eyewitnesses to the alleged stabbing. Instead, to prove the elements of the crimes charged, including the element of intent, the People relied upon, inter alia, several statements introduced, over the defendant's objection, pursuant to the excited utterance and present sense impression exceptions to the hearsay rule.
The evidence admitted at trial established that, after the stabbing incident, the victim left the residence and ran outside, where she informed a bystander that she had been stabbed by her husband. Another bystander, who was never identified and never testified at trial, called the 911 emergency number, reporting that he saw a female bleeding. When asked "Was she assaulted or did she fall?," the caller stated, "I think someone stab [sic] her," but the record established that he had not observed the incident. The victim and the daughter approached an ambulance that had been stopped by a bystander, and the victim was treated at the scene for a stab wound to her chest and a laceration on her chin. The victim and the daughter told the paramedics that the victim had been stabbed by her husband. According to police officers who responded to the scene, the defendant's son arrived, and, after speaking with the victim in the ambulance, approached the defendant, who was being detained outside the residence, and yelled "Why, why, why? Why did you stab my mom?" The son did not observe the incident, and he did not testify at trial.
The victim was taken to a hospital, and the defendant was placed under arrest and transported to a police station. The daughter returned to the family's home, and approximately 20 minutes to 40 minutes after the stabbing, Police Officer Ryan Costello entered the home and [*2]interviewed the daughter for approximately 5 to 10 minutes. Costello testified at trial that the daughter was "visibly upset," "crying," and "[s]haking." Costello, who spoke Spanish "conversationally," testified that he asked the daughter, in Spanish, to "indicate to [him] what happened" using "simple words," and to "please also use hand gestures and body gestures." In response, the daughter "made motions." She "[t]urned [Costello] around," "[p]ulled [him] in close," and then pointed to the knife and "made motions with her hand." Costello demonstrated those motions for the jury by making "a grabbing motion with his right hand as if he was holding a knife," and making two "thrusting motions down towards his chest area." In addition, according to Costello, the daughter recounted that she had been talking to the victim prior to the stabbing and that the defendant "had come over from the kitchen with the knife and grabbed them and started attacking [the victim]." The daughter told Costello that she and a friend "managed to grab the knife out of [the defendant's] hands," and that the defendant exited the residence.
Approximately 30 to 90 minutes after the stabbing, Police Officer Erica Kaifler arrived at the residence. Kaifler testified at trial that she asked the daughter "if she knew what happened," and, in reply, the daughter "said that her dad had stabbed her mom."
At the hospital, the victim told an emergency room physician that she had been stabbed by her husband. The physician observed a stab wound in the center of the victim's chest which fractured her sternum and another wound in the victim's neck just below her jaw. The victim underwent surgery and was discharged from the hospital the following day. During a psychiatric consultation conducted at the hospital, the victim reported that the stabbing occurred at the end of a party at her residence when she attempted to take a bottle of liquor away from the defendant, who had become intoxicated. According to the consultation report, the victim stated that the defendant "grabbed a knife and came towards" her, and that the victim "then fell on the floor and [the defendant] fell on her after[,] but she doesn't recall exact details to determine if he stabbed her accidentally due to the fall or on purpose."
At trial, prior to opening statements, the People moved in limine to introduce into evidence Costello's above-described testimony regarding the daughter's statements and visual demonstration, and the Supreme Court granted the People's motion over the defendant's objection. The defendant also objected to the admission of portions of the 911 call and the testimony relating to the son's question to the defendant at the scene of the defendant's arrest, as well as the daughter's additional statement to Kaifler. At the conclusion of the trial, the jury acquitted the defendant of attempted murder in the second degree, but found him guilty of assault in the first degree.
The defendant correctly contends that Costello's testimony regarding the daughter's detailed statements about, and re-enactment of, the circumstances surrounding the stabbing incident was testimonial hearsay and violated his constitutional right to confront witnesses against him, as the daughter did not testify at trial. The Confrontation Clause of the Sixth Amendment to the United States Constitution prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant ha[s] had a prior opportunity for cross-examination" (Crawford v Washington, 541 US 36, 53-54). The key inquiry is whether the out-of-court statement or record is testimonial or nontestimonial (see Michigan v Bryant, 562 US 344; Davis v Washington, 547 US 813, 823-824). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution" (Davis v Washington, 547 US at 822). To determine which of these categories an out-of-court statement falls into, a court should focus on "the purpose that the statement was intended to serve" (People v Rawlins, 10 NY3d 136, 148), and to ascertain "the 'primary purpose' of an interrogation," a court should "objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties" (Michigan v Bryant, 562 US at 359).
Here, the daughter's statements to Costello regarding the circumstances under which [*3]the defendant had stabbed the victim were testimonial in nature. Viewing the record objectively, at the time the statements were made, there was no ongoing emergency. The victim had been removed from the scene and taken to a hospital. The defendant had been taken into custody and transported to a police station. Indeed, Costello testified that a detective was never even assigned to the case, precisely because the police already "had the alleged perpetrator in custody." Although the daughter was still deeply upset as a result of the stabbing, she was not in need of police assistance, and it is clear that Costello's questions were not asked for the purpose of facilitating such assistance. Rather, the primary purpose of Costello's questioning of the daughter "was to investigate a possible crime" (Davis v Washington, 547 US at 830). Costello "was not seeking to determine . . . what is happening, but rather what happened" (Davis v Washington, 547 US at 830 [internal quotation marks omitted]). Indeed, Costello expressly asked the daughter to "indicate to [him] what happened." Moreover, Costello went beyond simply asking what happened and requested that the daughter describe and illustrate exactly how it happened using simple words and gestures. While the People argue that Costello requested the use of gestures merely to overcome a language barrier, the fact remains that he asked the daughter to convey information about past events. The daughter's detailed account of those events, complete with a physical re-enactment of the crime, did "precisely what a witness does on direct examination," and thus was "inherently testimonial" (Davis v Washington, 547 US at 830).
Accordingly, the police testimony recounting the daughter's out-of-court statements violated the defendant's Sixth Amendment right of confrontation.
Contrary to the People's contention, the constitutional error in admitting into evidence Costello's description of the daughter's statements and re-enactment of the offense cannot be deemed harmless beyond a reasonable doubt. Although the victim's statements to various individuals provided ample evidence of the defendant's identity as the perpetrator, the daughter's statements and visual demonstration, as recounted at trial by Costello, established the manner in which the defendant stabbed the victim and the circumstances surrounding the stabbing. This evidence refuted the statement made by the victim during her psychiatric consultation—which was undeniably helpful to the defendant's case—that the knife wound may have been inflicted accidentally when the defendant fell on top of her, and supplied proof of the defendant's intent to cause serious physical injury to the victim (see Penal Law § 120.10[1]).
The significance of this evidence in demonstrating the necessary intent was highlighted in the Supreme Court's charge to the jury in this case, which explained that "you must determine if the required intent can be inferred beyond a reasonable doubt from the proven facts[,] and in doing so you should consider the person[']s conduct and all the circumstances surrounding the conduct." Since the daughter's statement, heavily relied upon by the prosecutor in her summation, was critical in establishing the essential element of intent, it is impossible to conclude that there is no reasonable possibility that the error might have contributed to the defendant's conviction of assault in the first degree (see Chapman v California, 386 US 18, 23-24; Fahy v Connecticut, 375 US 85, 86-87; People v Crimmins, 36 NY2d 230, 237, 241; People v Lewis, 208 AD3d 595, 601-602).
Regardless of whether the evidence described by our dissenting colleague was sufficient to establish the defendant's intent to cause serious physical injury without the testimony recounting the daughter's out-of-court statement and re-enactment (see Fahy v Connecticut, 375 US at 86), it is reasonably possible that the admission of this powerful testimony "influenced the jury adversely to [the defendant]" (Chapman v California, 386 US at 23). We do not agree with our dissenting colleague's conclusion that the properly admitted evidence can be considered overwhelming in establishing the defendant's intent, but even if we did, such a conclusion would still not resolve the inquiry as to whether there is a reasonable possibility that the testimony recounting the daughter's statement and re-enactment "contributed" to the jury's finding of guilt (People v Crimmins, 36 NY2d at 237). Because such a reasonable possibility exists, the constitutional error cannot be deemed harmless.
Since we are ordering a new trial, we note that it was error to admit into evidence the [*4]statement of the defendant's son asking "Why, why, why? Why did you stab my mom?" under the excited utterance exception to the hearsay rule, and the portion of the 911 call in which the unidentified caller stated "I think someone stab her" under the present sense impression exception to the hearsay rule. Although the statement of a non-participant to the event described may be admitted as an excited utterance, "it must be inferable that the declarant had an opportunity to observe personally the event described in the declaration" (People v Fratello, 92 NY2d 565, 571; see People v Cummings, 31 NY3d 204, 209; People v Thelismond, 180 AD3d 1076, 1078). Here, there is no indication in the record that the defendant's son had personally observed the stabbing, and therefore his statements did not qualify under the excited utterance exception (see People v Cummings, 31 NY3d at 211; People v Thelismond, 180 AD3d at 1078). Further, the statements of the 911 caller did not qualify under the present sense impression exception, since the caller, who did not witness the stabbing, was not describing the stabbing as he personally perceived it, but was instead describing an impression he formed based on events occurring after the stabbing (see People v Thelismond, 180 AD3d at 1078).
In light of our determination, we need not reach the defendant's remaining contentions.
DILLON, J.P., ZAYAS and WAN, JJ., concur.
DOWLING, J., dissents, and votes to affirm the judgment, with the following memorandum:
I agree with my colleagues in the majority that the police testimony recounting the daughter's out-of-court statements violated the defendant's Sixth Amendment right of confrontation. I also find that it was error to admit into evidence the statement of the defendant's son asking, "Why, why, why? Why did you stab my mom?," and the portion of the 911 call in which the unidentified caller stated "I think someone stab her." However, I disagree with the conclusion that any erroneous admission of this evidence mandates reversal of the defendant's conviction.
In my view, the other evidence introduced by the People overwhelmingly established that the defendant stabbed the victim with intent to cause her serious physical injury (see Penal Law § 120.10[1]; People v Bracey, 41 NY2d 296, 301). A witness who was near the victim's house at the time of the stabbing testified that the victim approached him on the street "with a bloody chest asking for help," and told him, "my husband stabbed me." The victim pointed to the defendant, who was crossing the street, at which time the witness ran after the defendant and forcibly subdued him until the police arrived. There was no evidence that the defendant called for help for the victim before he attempted to flee. Furthermore, the medical evidence plainly established that this was an intentional stabbing. The medical records from the hospital where the victim was treated reflect that she was diagnosed with "multiple puncture/penetrating wounds," significant blood loss, and a fractured sternum, which necessitated surgery and an overnight hospital stay. The emergency room physician who treated the victim testified that she "had 2 obvious stab wounds[,] one to the right neck and the other to the center of her chest." The victim told the physician that she had been stabbed by her husband. Both stab wounds measured just over two inches in length, and the stab wound to the victim's chest "went through the skin and down to the bone," stopping just millimeters from the heart vessel behind the victim's sternum. According to the physician, a charm necklace that the victim was wearing absorbed most of the force of the stab wound to the victim's chest and likely prevented her from suffering a puncture injury to her heart vessels, which are "[f]requently" fatal.
Moreover, there was no reasonable possibility that the errors might have contributed to the defendant's conviction. Although, as noted by my colleagues in the majority, the prosecutor relied on the daughter's out-of-court statements in her summation, the prosecutor relied even more heavily on the testimony of the emergency room physician, which irrefutably demonstrated, among other things, that the defendant stabbed the victim twice. The daughter's out-of-court statements thus merely corroborated this evidence of the essential element of intent that was otherwise before the jury. Accordingly, any error in admitting the evidence was harmless beyond a reasonable doubt (see People v Crimmins, 36 NY2d 230, 237; People v Goodbread, 127 AD3d 1106; cf. People v Dubarry, 25 NY3d 161, 177).
In addition, I find that the sentence imposed was not excessive (see People v Suitte, 90 AD2d 80), and the remaining contentions raised by the defendant to be without merit. I therefore respectfully dissent, and vote to affirm the judgment of conviction.
ENTER:
Maria T. Fasulo
Clerk of the Court