OPINION OF THE COURT
Abdus-Salaam, J.
In the first of these appeals we must consider whether Penal Law § 70.25 (2) permits consecutive or concurrent sentencing for defendant’s convictions. Specifically, we must resolve *372 whether defendant’s convictions for attempted robbery and robbery were properly ordered to run consecutively by the trial court. In the second appeal, we must consider whether defense counsel’s advice to defendant, prior to taking an Alford plea to attempted murder, that his sentence after conviction for that crime could be directed to run consecutively to his other sentences rendered counsel’s assistance ineffective. Additionally, we must determine whether defendant’s Alford plea was knowing, intelligent, and voluntary. We hold that defendant’s consecutive sentences for robbery and attempted robbery, as modified by the Appellate Division, meet the requirements of Penal Law § 70.25 (2) as explained by this Court in People v Laureano (87 NY2d 640, 643 [1996]). We also hold that defendant received effective assistance of counsel, and defendant’s Alford plea was knowing, intelligent and voluntary.
L
Defendant’s convictions stem from his actions in a City of Rochester park on the evening of August 16, 2008. Defendant, along with three others, approached a group of five individuals as they were walking to a vehicle. Defendant pulled out a gun and told everyone to get on the ground or he would kill them. Defendant cocked the gun, placed it at the rear of one of the victims’s head as that victim was lowering himself to the ground, and fired one shot. The victim of the shooting survived, as the bullet only grazed the back of his head because he flinched when defendant fired the gun. The purse of one of the other victims was taken during the incident. When defendant and his companions left, the police were called and the shooting victim was taken to the hospital. The police recovered a handgun in nearby bushes and later verified that it was the gun used in the shooting. Following an unrelated search of defendant’s home in November 2008 for suspected criminal possession of a weapon, defendant was interrogated by an officer who suspected defendant might have been involved in the park robbery a few months prior. Defendant admitted to possessing a gun in the park on the date of the robbery and intending to rob the group. He claimed that he did not intend to kill anyone. Defendant was charged with one count of first-degree attempted murder (see Penal Law §§ 110.00, 125.27 [1] [a] [vii]), one count of first-degree robbery (see Penal Law § 160.15 [4]), two counts of second-degree criminal possession of a weapon (see Penal Law § 265.03 [1] [b]; [3]), three counts of first-degree attempted robbery (see Penal Law §§ 110.00, 160.15 [4]), and *373 third-degree criminal possession of a weapon (see Penal Law § 265.02 [1]).
During trial, four of the victims testified for the People. Three of the four victims testified that they heard defendant cock the gun before pointing the gun at the shooting victim. However, defendant, who testified on his own behalf, stated that he did not point the gun at anyone in particular and the gun accidentally discharged. The jury was unable to reach a verdict on the first-degree attempted murder charge, but found defendant guilty of the remaining charges. Defendant consented to a mistrial as to the attempted murder and accepted a partial verdict.
Defendant was sentenced as follows: a determinate term of 18 years with five years of postrelease supervision (PRS) for robbery; determinate terms of 15 years with five years of PRS for each count of criminal possession of a weapon in the second degree; determinate terms of 15, 10, and 5 years, with five years of PRS each, for the attempted robbery counts; and an indeterminate term of 2 to 6 years for criminal possession of a weapon in the third degree. The court directed the sentences for the robbery and the two counts of criminal possession of a weapon in the second degree to run concurrently with each other but consecutively to the remaining sentences: The court further directed that the sentence for each attempted robbery count was to run consecutively to all other sentences, and that the sentence for criminal possession of a weapon in the third degree was to run concurrently with all other sentences. The aggregate sentence, therefore, was 48 years with five years of PRS.
Prior to re-trying defendant on the first-degree attempted murder count, defense counsel requested an Alford plea to the minimum sentence available on that charge to run concurrent to defendant’s other sentences. Initially, the court refused to permit the plea, but thereafter allowed argument on the issue. Defense counsel stated that defendant “would not be able to give a colloquy indicating an intentional act on his part,” and thus an Alford plea was preferable.[1] The People explained that “[biased upon conversations after the trial the best information that we have is that the vote in the jury was eleven to one for conviction.” Defense counsel stated that defendant
*374 “is serving a lengthy term as a result of the charges upon which he has been convicted and he sees based on our discussions that there is a strong likelihood that if we had a retrial that he would be convicted of the attempted murder charges, and he would not know what the sentence would be and whether it would be concurrent or consecutive. The offer here has been for him to plead to the charge and receive the minimum sentence to run concurrent with the sentence he is serving. And he has indicated to me that he wishes to make the voluntary choice to accept this opportunity to plead and receive this concurrent sentence.”
Following a recitation of the facts underlying the attempted murder charge by defense counsel and the People, and a recitation of what the testimony would be upon retrial, the court asked defendant “ [i] s that correct . . . ?” After defendant responded “Yes,” the court accepted the Alford plea, stating that the discussion of the trial evidence and defendant’s intention to take the plea satisfied the requirements to which the court was legally obligated to adhere. The court asked defendant whether he was aware of what was taking place and asked him if he wanted to say anything. Defendant responded “No,” and acknowledged that he was pleading guilty. The court ordered the promised sentence of 15 years to life to run concurrently with the previously imposed sentences. Defendant appealed separately from his convictions following the jury verdict and his conviction following the Alford plea.
On the first appeal, the Appellate Division modified the judgment of conviction by directing the sentences imposed on the counts of attempted robbery to run concurrently with each other and consecutively to the sentence imposed on the completed robbery, and otherwise affirmed (126 AD3d 1419 [4th Dept 2015]). The Court concluded that the actus reus of all the attempted robbery counts “was a single act constituting one offense, and thus the sentences on those counts must run concurrently with each other” (126 AD3d at 1421).[2] The Court took no issue with the sentencing on the remaining counts, noting that the trial court properly exercised its discretion in directing that the sentences for robbery and attempted robbery *375 run consecutively. In the second appeal, the Appellate Division affirmed (126 AD3d 1423 [4th Dept 2015]), concluding that “a concurrent sentence was not required for the attempted murder count . . . because the shooting of the male victim was an act separate and distinct from the” robbery and attempted robbery counts (126 AD3d at 1422). Accordingly, the Court held that defense counsel was not ineffective for advising defendant that a sentence for attempted murder could run consecutively to his other sentences, and that defendant’s plea in exchange for a concurrent minimum sentence was knowing, intelligent and voluntary. We agree.
h—I I—I
In the first appeal, defendant argues that Penal Law § 70.25 (2) mandates concurrent sentencing under these facts because the statutory elements of the robbery and attempted robbery counts are, by definition, identical or overlapping, and defendant engaged in a single act to attempt and ultimately execute the robbery—waving his gun.
Penal Law § 70.25 (2) provides: “When more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other, the sentences . . . must run concurrently.” We have interpreted that provision to require that “sentences imposed for two or more offenses may not run consecutively: (1) where a single act constitutes two offenses, or (2) where a single act constitutes one of the offenses and a material element of the other” (People v Laureano, 87 NY2d at 643; see People v Battles, 16 NY3d 54, 58 [2010]).
In People v Laureano, we explained that when “determining whether concurrent sentences are required, the sentencing court must first examine the statutory definitions of the crimes for which defendant has been convicted” (87 NY2d at 643). The court must then determine “whether the actus reus element is, by definition, the same for both offenses (under the first prong of the statute), or if the actus reus for one offense is, by definition, a material element of the second offense (under the second prong)” (id.). The court must focus on actus reus rather than *376 mens rea “[b]ecause both prongs of Penal Law § 70.25 (2) refer to the ‘act or omission’. . . that constitutes the offense” (id.).[3]
If a defendant’s acts or omissions do not fit under either prong of the statute, “the People have satisfied their obligation of showing that concurrent sentences are not required” (id.). When there “is some overlap in the elements of multiple statutory offenses,” courts retain discretion to impose consecutive sentences “if the People can demonstrate that the acts or omissions committed by [the] defendant were separate and distinct acts” (People v Frazier, 16 NY3d 36, 40-41 [2010] [internal quotation marks omitted]), even “though they are part of a single transaction” (People v Brown, 80 NY2d 361, 364 [1992]).
Defendant was sentenced to consecutive terms of imprisonment for his convictions of attempted first-degree robbery and first-degree robbery. Penal Law § 160.15 (4) provides that a person commits robbery in the first degree if he or she “forcibly steals property and . . . , in the course of the commission of the crime or of immediate flight therefrom, . . . [d]isplays what appears to be a pistol, revolver, ... or other firearm. “ While the elements of attempted first-degree robbery and first-degree robbery obviously overlap, here, the completed robbery included a separate and distinct act, giving the trial court discretion to run the sentences consecutively. The purse of one of the victims was taken during the incident. The trial evidence revealed that defendant kicked her purse to his companion, who took it before defendant fired the gun. That separate and distinct act involved the taking of one victim’s purse. The taking of this victim’s purse constituted a separate act against a single victim that was distinct from defendant’s use of the gun in an attempt to rob the remaining victims. Although the taking of the purse occurred during a single criminal transaction, the People offered evidence that defendant waved the gun, which was a separate act from the taking of the purse, and that evidence was sufficient for the trial court to impose consecutive sentences for the robbery and attempted robberies.
People v Ramirez (89 NY2d 444 [1996]) is instructive. There, a man displaying an automatic weapon ordered two security guards, who were transporting money to a money center, to lie *377 down on the ground. One of the guards moved and was shot repeatedly. Other robbers who were similarly armed stole the guns from both guards and money from inside their vehicle. The defendant, one of the robbers, was charged with nine counts of robbery: three relating to the theft from the uninjured guard, three relating to the theft from the guard who was shot, and three relating to the theft of money. We determined that the forcible taking from the uninjured guard was a material element of the robbery of the money from the vehicle, and therefore all of the sentences relating to those two thefts had to run concurrently. We, however, permitted consecutive sentences for the counts relating to the theft from the guard who was shot. Although “the crimes were temporally close in a single criminal episode,” the “entire tenor” of the robberies was “distinct” (id. at 454-455). So too here, the robbery was a single criminal episode, but the taking of that victim’s purse was a separate and distinct act from the attempted robberies achieved by waving the gun. As the dissent concedes, once the People offer evidence of the existence of a separate and distinct act, the trial court has discretion to order consecutive sentences. The People did so here. Under these circumstances we cannot say the trial court abused its discretion by directing that the sentences for those convictions run consecutively.[4]
1-H HH I—I
In the second appeal, defendant takes issue with the Alford plea he entered, contending that the plea must be vacated *378 because (1) he received ineffective assistance of counsel and (2) his plea was not knowing, voluntary and intelligent.
A. Ineffective Assistance of Counsel
Defendant argues that the only reason he took the plea was because his counsel advised him that he could receive an additional consecutive sentence if he went to trial. Defendant asserts that advice was incorrect, because, in his view, his conviction for attempted murder must run concurrently with his conviction for robbery as a matter of law. The first-degree murder statute provides that a person is guilty of that crime when “[w]ith intent to cause the death of another person, he causes the death of such person or of a third person; and . . . (vii) the victim was killed while the defendant was in the course of committing or attempting to commit and in furtherance of robbery” (Penal Law §§ 125.27 [1] [a] [vii]; see 110.00). Defendant argues that any sentence for attempted first-degree murder that would be imposed upon him would have to run concurrently with his sentences for robbery and attempted robbery, because in order to be convicted of first-degree murder under the aforementioned section, he would have had to commit an underlying enumerated felony, here the robbery.
We have not directly addressed whether the sentence on a first-degree felony murder charge must run concurrently with the sentence imposed on the underlying felony. At the time of defendant’s sentencing, the Fourth Department had yet to address this issue, but the Second and Third Departments had, holding that a sentence for first-degree felony murder had to run concurrently with the sentence imposed on the underlying felony (see People v Cherry, 46 AD3d 1234, 1238 [3d Dept 2007], lv denied 10 NY3d 839 [2008]; People v Middleton, 32 AD3d 557, 557-558 [3d Dept 2006]; People v Alves, 288 AD2d 483, 484 [2d Dept 2001]). However, when faced with the issue in this case, the Fourth Department affirmed the sentencing court’s conclusion that the sentences could run consecutively. Under these circumstances, we cannot say that defense counsel’s advice to defendant, even if erroneous, rendered him ineffective (see e.g. People v Modica, 64 NY2d 828, 829 [1985]).
B. Validity of the Alford Plea
Defendant argues that his plea should be vacated because it was not knowing, intelligent and voluntary. He contends that the sentencing court’s failure to perform a factual allocution is inexcusable, where the trial evidence demonstrated that he lacked the intent required for attempted murder.
*379 An Alford plea is permitted in New York only when “it is the product of a voluntary and rational choice, and the record before the court contains strong evidence of actual guilt” (Matter of Silmon v Travis, 95 NY2d 470, 475 [2000]). We have held in this context that if a defendant’s factual recitation “negates an essential element of the crime, raising substantial doubt as to guilt, the trial court must inquire further to ensure that defendant’s guilty plea is both knowing and voluntary” (Matter of Silmon, 95 NY2d at 474 n 1 [emphasis added]).
The extensive factual recitation of the trial evidence presented by both defense counsel and the People was sufficient for the court to be satisfied that there was “strong evidence of guilt,” such that an Alford plea was appropriate under the circumstances. Specifically, during the hearing the People stated on the record that the trial evidence indicated defendant was present in the park on the date at issue; he was armed with a loaded handgun and displayed the handgun in the direction of his victims; and he pointed the gun at the back of one of the victims’s head. Although defendant stated that the gun went off accidentally, three of the four victims testified that they heard defendant cock the gun before placing it at the back of the shooting victim’s head. Defendant’s counsel agreed with the People’s recitation, and explained that defendant would not admit guilt to first-degree murder. The court noted that it understood that defendant disputed whether he possessed the requisite intent, consistent with his testimony at trial. The court then asked defense counsel to ensure that defendant was in agreement with taking the Alford plea. After speaking with defendant, defense counsel stated on the record that defendant was ready to proceed and that defendant did not dispute that his testimony would be consistent with his trial testimony should the case be re-tried. Defendant expressly acknowledged that counsel’s statement was correct. The court verified that defendant wished to proceed, and the plea was accepted. Under these circumstances, the trial record indicated strong evidence of guilt and the court was not required to do more than it did to ensure that defendant voluntarily entered the plea (see Matter of Silmon, 95 NY2d 470).
Defendant further argues that his plea was not knowing, voluntary, and intelligent because the only reason he pleaded guilty to attempted murder was to ensure that he received a concurrent sentence. The dissent concludes that similar to our felony murder jurisprudence, a conviction for intentional felony *380 murder must run concurrently with a conviction for the underlying felony. However, we have no occasion to address that argument as defendant first raised it in his reply brief. But, even if we were to apply our sentencing rules for felony murder, defendant’s argument must fail. Under the facts of this case, concurrent sentencing was not required.
Here, in his attempt to rob one of the victims, defendant also shot that victim. Accordingly, the attempt to rob that victim was sufficient to support defendant’s conviction for first-degree attempted murder (see Penal Law § 125.27 [1] [a] [vii]). Wholly separate from that act, however, was the taking of another victim’s purse. Although one criminal transaction occurred, those two separate and distinct acts—the shooting and the taking of the purse—perpetrated against two separate victims allowed the court to run the sentence for attempted first-degree murder consecutively to the robbery (see Brown, 80 NY2d 361; People v Lemon, 38 AD3d 1298, 1299 [2007]).
Defendant points out that the People’s failure to specify in the indictment or at any time prior to the court instructing the jury which crime formed the basis for the first-degree attempted murder charge requires concurrent sentencing (see People v Parks, 95 NY2d 811, 815 [2000] [“Under (such) circumstances, it is impossible to tell which robbery is a separate and distinct act from the felony murder”]). If we were to apply our felony murder sentencing rules here, the Parks issue would not be fatal. At the time the Alford plea was requested by defendant, the People were facing a retrial, during which the People could have resolved the Parks issue by identifying the attempted robbery of the shooting victim as the basis of the first-degree attempted murder count. Consequently, if defendant were convicted of attempted murder after retrial, that sentence could run consecutively to his sentence for robbery. Defendant therefore received the benefit he apparently sought by taking the plea—a concurrent minimum sentence.
TV.
Accordingly, on the first appeal the Appellate Division order, insofar as appealed from, should be affirmed. On the second appeal, the Appellate Division order should be affirmed.

. An Alford plea permits a defendant to plead guilty to a crime while maintaining innocence (see North Carolina v Alford, 400 US 25 [1970]).

. The People did not appeal the imposition of concurrent sentences for the three attempted robbery counts.

. The actus reus of the crime is “ ‘[t]he wrongful deed that comprises the physical components of a crime’ ” (People v Rosas, 8 NY3d 493, 496 n 2 [2007], quoting Black’s Law Dictionary 39 [8th ed 2004]).

. The dissent’s hypothetical robbery involving a perpetrator waving his gun while demanding that a group of five victims throw their wallets toward him would not always require consecutive sentences under this decision. Rather, as the hypothetical suggests, depending on the manner in which the taking of the wallets is accomplished, there may or may not be evidence that separate and distinct acts were committed to effectuate the robbery so as to permit consecutive sentences. Even where the evidence may permit consecutive sentences, the trial court would still retain discretion to impose concurrent terms. The conclusion we make today is based on the facts of this case and the discretion of the trial judge to direct consecutive sentences based on the defendant’s separate and distinct acts. Moreover, the dissent’s prediction that this decision will result in “sentences grossly disproportionate to the crimes of which defendants are convicted” (dissenting op at 381) ignores Penal Law § 70.30 in which the legislature limited the number of consecutive sentences that can be imposed on any defendant by requiring the Department of Corrections and Community Supervision to cap the aggregate term according to the statute (see e.g. People ex rel. Ryan v Cheverko, 22 NY3d 132 [2013]).