This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------

No. 26
The People &c.,
            Respondent,
        v.
Ryan P. Brahney,
            Appellant.

Kathryn Friedman, for appellant.
Christopher T. Valdina, for respondent.

STEIN, J.:

On this appeal, we are asked to determine whether
consecutive sentences were authorized under Penal Law § 70.25 (2)
for defendant's burglary and intentional murder convictions.
Inasmuch as the People identified evidence in the record to
support their view that the crimes were committed through

- 1 -

separate and distinct acts, consecutive sentences were permissible.

## I.

Defendant was charged in an indictment with numerous crimes, including two counts of murder in the second degree and two counts of burglary in the first degree, after he killed his former girlfriend in her home by stabbing her with a butcher knife. At the ensuing nonjury trial, defendant stipulated in writing that he "caused the death of" the victim "by stabbing her with a knife," but proffered an affirmative defense of extreme emotional disturbance. Defendant's uncle testified that defendant appeared at the uncle's home at approximately 1:00 a.m. on the night of the murder. Defendant was covered in blood, asked that his mother be called to pick up his son, and stated that he had stabbed and killed the victim. The uncle called the police. At the station, defendant made statements to police that he had killed the victim; he was subsequently recorded on a telephone call with his mother, admitting that he went to the victim's apartment, "dragged her down the stairs and murdered her."

Police responding to the victim's apartment determined that defendant had gained entrance by smashing a window and tearing a screen. They observed signs of a struggle in the upstairs master bedroom, as well as a small smear of blood on a wall outside the bedroom, a smear of blood on a half wall at the

top of the staircase landing, and a few drops of blood on the floor upstairs and on the stairs. Testing later revealed this to be the victim's blood. The victim was found downstairs, on the floor of her living room, with a knife sticking out of her chest. The photographs depicting her body and wounds corroborate the police testimony at trial that there were large quantities of blood in the living room, including next to the victim's body.

The Chief Medical Examiner testified that he found 38 slash or stab wounds on the victim's body, all of which were consistent with the murder weapon. He explained that several of the wounds, individually, could have been fatal -- specifically, those that penetrated the chest cavity, caused lung collapse, injured the heart, sliced a major vein in the neck and penetrated the liver -- but did not identify a particular wound that clearly caused death immediately.

As relevant here, defendant was found guilty of intentional murder, as well as two counts of burglary in the first degree, based on (1) causing physical injury and (2) using or threatening to use a dangerous instrument. At sentencing, the People argued that consecutive sentences were appropriate because the evidence showed that defendant pulled the victim out of bed and inflicted minor injuries on her while she was upstairs, before dragging her down the stairs and inflicting mortal wounds in the living room. Defendant argued that consecutive sentences were not permissible because the crimes were part of a continuing

course of criminal conduct that was formulated, according to the People, before he entered the victim's apartment.  The court, upon resentencing, sentenced defendant to a term of imprisonment of 54 years to life, with the concurrent sentences on the two burglary convictions imposed consecutively to his sentence on the intentional murder conviction.

Upon defendant's appeals from the judgment of conviction and resentence, the Appellate Division affirmed, with two Justices dissenting (126 AD3d 1286 [4th Dept 2015]).  While stating that "the actus reus elements of the burglary counts and the murder count overlap under the facts presented here," the court "nevertheless conclude[d] that the People 'establish[ed] the legality of consecutive sentencing by showing that the acts or omissions' committed by defendant were separate and distinct acts" (id. at 1289, quoting People v Laureano, 87 NY2d 640, 643 [1996]).  In contrast, the dissenting Justices concluded that "the People failed to meet their burden of establishing that the burglary and murder offenses were committed by separate and distinct acts," based upon their view that "it is possible" that the wound or wounds that the victim sustained while upstairs may have ultimately caused her death (id. at 1291-1292).  One of the dissenting Justices granted defendant leave to appeal.

II.

Penal Law § 70.25 authorizes a trial judge to direct that sentences run either concurrently or consecutively except

that

> "[w]hen more than one sentence of
> imprisonment is imposed on a person for two
> or more offenses committed through a single
> act or omission, or through an act or
> omission which in itself constituted one of
> the offenses and also was a material element
> of the other, the sentences . . . must run
> concurrently"

(Penal Law § 70.25 [2]).  In other words, under section 70.25
(2), "sentences imposed for two or more offenses may not run
consecutively: (1) where a single act constitutes two offenses,
or (2) where a single act constitutes one of the offenses and a
material element of the other" (Laureano, 87 NY2d at 643).

In determining whether consecutive sentences are
authorized, "a court must first look to the statutory definitions
of the crimes at issue to discern whether the actus reus elements
overlap" (People v Rodriguez, 25 NY3d 238, 244 [2015] [internal
quotation marks and citation omitted]; see People v Couser, 28
NY3d 368, 375 [2016]).  "Reference to the fact-specific
circumstances and proof of a crime to determine whether, under
the second statutory prong, one offense is a material element of
a second is not the test for consecutive sentencing purposes"
(People v Day, 73 NY2d 208, 211 [1989]).  Rather, "the commission
of one offense is a material element of a second for restrictive
sentencing purposes if, by comparative examination, the statutory
definition of the second crime provides that the first crime is
also a necessary component in the legislative and definitional
sense" (id.).

Moreover, even "[i]f the statutory elements do overlap under either prong of the statute, the People may yet establish the legality of consecutive sentencing by showing that the 'acts or omissions' committed by defendant were separate and distinct acts" (Laureano, 87 NY2d at 643; accord People v McKnight, 16 NY3d 43, 48 [2010]).  That rule applies even though the separate and distinct acts "are part of a single transaction" (Couser, 28 NY3d at 376 [internal quotation marks and citation omitted]), because "[t]he test is not whether the criminal intent is one and the same and inspiring the whole transaction, but whether separate acts have been committed with the requisite criminal intent" (McKnight, 16 NY3d at 49 [internal quotation marks and citations omitted]).  In short, "consecutive sentences may be imposed when either the elements of the crimes do not overlap or if the facts demonstrate that the defendant's acts underlying the crimes are separate and distinct" (People v Ramirez, 89 NY2d 444, 451 [1996]); "[c]onversely, where the actus reus is a single inseparable act that violates more than one statute, [a] single punishment must be imposed" (Rodriguez, 25 NY3d at 244 [internal quotation marks and citation omitted]).

This Court has repeatedly explained that "[t]he People have the burden of establishing the legality of consecutive sentences" (People v Rosas, 8 NY3d 493, 496 [2007]).  In Laureano, the Court stated that the People may meet their burden of demonstrating that the facts underlying the crimes are

separate and distinct "by identifying the facts which support their view . . . from the . . . record" (Laureano, 87 NY2d at 644; accord Rodriquez, 25 NY3d at 244).  In contrast, where "the People are unable to point to any testimony or evidence which would support the view that the offenses of which defendant stands convicted involved disparate or separate acts, the sentences must run concurrently" (People v Underwood, 52 NY2d 882, 883 [1981]).

### III.

As relevant to the particular crimes at issue here, "[a] person is guilty of murder in the second degree when . . . [w]ith intent to cause the death of another person, he causes the death of such person or of a third person" (Penal Law § 125.25 [1]).  As defendant argues, the actus reus of intentional murder is causing the death of a person.  A person commits burglary in the first degree

> "when he knowingly enters or remains
> unlawfully in a dwelling with intent to
> commit a crime therein, and when, in
> effecting entry or while in the dwelling or
> in immediate flight therefrom, he or another
> participant in the crime: . . . [c]auses
> physical injury to any person who is not a
> participant in the crime; or . . .[u]ses or
> threatens the immediate use of a dangerous
> instrument"

(Penal Law § 140.30 [2], [3]).  The actus reus element of the burglary charge predicated upon the use or threatened use of a dangerous instrument does not, by definition, overlap with the actus reus of murder in the second degree.  In contrast,

defendant correctly argues that there is an overlap in the actus reus elements of murder in the second degree and the burglary count in which the aggravating factor was causing physical injury.  "By definition, the act of causing death is subsumed within the element causing . . . physical injury" (Laureano, 87 NY2d at 644; see Penal Law § 10 [9], [10]) and, thus, the act constituting murder here was a material element of that burglary count.  The People therefore concede that, with respect to the latter burglary charge, they were required to identify facts establishing that defendant committed this offense and murder through separate and distinct acts.  Because "the People offer[ed] evidence of the existence of . . . separate and distinct act[s]" with respect to that count of burglary in the first degree -- indeed, with respect to both counts -- "the trial court ha[d] discretion to order consecutive sentences" (Couser, 28 NY3d at 377).

        Specifically, the evidence of a small amount of blood upstairs, as compared with the large amount downstairs, supports the determination of the courts below that defendant used a dangerous instrument to cause physical injury to the victim upstairs, and then -- as he admitted -- "dragged her down the stairs and murdered her" in a separate and distinct act (see People v Brown, 80 NY2d 361, 365 [1992]).  The scenario posited by defendant would have required that the victim barely bled in the location where she sustained a stab wound that sliced or

punctured one of her internal organs, but that she bled profusely in a different location.  Under these circumstances, we cannot say as a matter of law that the conduct resulting in defendant's conviction of intentional murder and the conduct underlying the elements of the burglary convictions was a single act for consecutive sentencing purposes (see People v Salcedo, 92 NY2d 1019, 1022 [1998]).

Defendant's argument that he received the ineffective assistance of counsel has been considered and found to be lacking in merit.  His remaining claim was not preserved for our review.  Accordingly, the orders of the Appellate Division should be affirmed.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Orders affirmed.  Opinion by Judge Stein.  Chief Judge DiFiore and Judges Rivera, Abdus-Salaam, Fahey, Garcia and Wilson concur.

Decided March 30, 2017