People v Sabb (2026 NY Slip Op 01590)

People v Sabb

2026 NY Slip Op 01590

Decided on March 19, 2026

Court of Appeals

Rivera, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 19, 2026

No. 25 

[*1]The People & c., Appellant,
vJhajuan Sabb, Respondent.

Emily Schultz, for appellant. 
Steven M. Sharp, for respondent. 

RIVERA, J.:
The issue on appeal is whether Supreme Court erred when it sentenced defendant consecutively on two offenses after defendant pleaded guilty. We hold that it did. The prosecution failed to meet its burden of establishing that Supreme Court could lawfully sentence defendant consecutively, because neither the allegations in the indictment on the count pleaded to nor defendant's admissions during his guilty plea allocutions showed that the two offenses were the result of separate and distinct acts, as required by law. Thus, we affirm.I.

Defendant Jhajuan Sabb was indicted on two counts of murder in the second degree, four counts of attempted assault in the first degree, and one count of criminal possession of a weapon in the second degree. The charges arose from a drive-by shooting that defendant and two others participated in, which injured four men gathered on the street, including A.T., and killed passerby S.A., who was standing 10 feet away from the group, waiting to cross the street.
In satisfaction of the indictment, defendant pleaded guilty to one count of manslaughter in the first degree, as a lesser included offense to one of the murder counts, for causing the death of S.A., and to one count of attempted assault in the first degree with respect to A.T. As agreed to by the parties, Supreme Court sentenced defendant consecutively to 25 years' incarceration and 5 years' post-release supervision (PRS) on the manslaughter count and 10 years' incarceration and 5 years' PRS on the attempted assault count, for an aggregate term of 35 years' incarceration.
On appeal, defendant argued, as relevant here, that the consecutive sentences were unlawful. In a 3-2 decision, the Appellate Division modified Supreme Court's judgment to run the sentences [*2]concurrently, concluding that neither the allegations in the indictment nor defendant's admissions during his guilty plea allocutions established that the death and attempted assault "arose from a separate and distinct pull of the [firearm's] trigger by defendant" (238 AD3d 1212, 1212-1215, 1219 [3d Dept 2025] [internal quotation marks omitted]). Two Justices dissented in part, concluding that the consecutive sentences were not illegal, relying primarily on assertions in defendant's presentence report (id. at 1216-1219 [Egan Jr., P.J., and Mackey, J., dissenting in part]). One of the dissenting Justices granted the prosecution leave to appeal (43 NY3d 1049 [2025]).II.

The prosecution's argument before us is that the information contained in the record as a whole authorized Supreme Court to sentence defendant consecutively. In support of that claim, the prosecution urges us to adopt a new, "more flexible and commonsense approach" to evaluating the legality of consecutive sentences imposed upon conviction by guilty plea. Under this proposed rule, an appellate court may consider all information available to the trial court, which, as in this case, would include the presentence report, grand jury minutes, and any pre-trial hearing testimony and exhibits. Defendant counters that there is no reason to deviate from our established precedent, which limits appellate review of consecutive sentences to the factual allegations in the indictment on the count pleaded to and a defendant's admissions during the plea allocutions. Defendant maintains that Supreme Court lacked authority to sentence him consecutively because the prosecution failed to satisfy its burden of establishing that the crimes to which defendant pleaded guilty were committed by separate and distinct acts, as required by law.
As a threshold matter, contrary to the prosecution's assertions, defendant was not required to preserve his challenge to the legality of consecutive sentencing.
"We have recognized a narrow exception to the preservation rule where a court exceeds its powers and imposes a sentence that is illegal in a respect that is readily discernible from the trial record. Commonly referred to as the 'illegal sentence' exception, this rule allows this Court to review certain issues despite the absence of a timely objection at the trial court level" (People v Nieves, 2 NY3d 310, 315 [2004] [internal quotation marks and citation omitted]).
This exception applies to a defendant's claim that the trial court unlawfully imposed consecutive sentences because the record does not demonstrate that the acts underlying the crimes are separate and distinct (see People v Samms, 95 NY2d 52, 56 [2004] [confirming that a defendant's challenge to the legality of consecutive sentencing falls within the illegal sentence exception]).[FN1] That a defendant pleaded guilty in exchange for consecutive sentences is irrelevant, because the illegal sentence exception is based on a court's lack of authority to impose a sentence impermissible under [*3]the law, regardless of the parties' agreement (see id. [illegal sentence claim reviewable despite lack of preservation because it "involve(s) the essential nature of the right to be sentenced as provided by law" (internal quotation marks and citations omitted)]). Indeed, in People v Laureano, the Court concluded that the trial court illegally imposed consecutive sentences, even though the defendant's conviction was pursuant to a negotiated plea agreement that required consecutive sentencing (87 NY2d 640, 642-645 [1996]). The prosecution's preservation arguments are thus unavailing, and defendant's challenge to the legality of his consecutive sentences falls within our illegal sentence exception.
We now turn to the merits and conclude that, based on the factual assertions in the count of the indictment pleaded to and the plea allocutions, Supreme Court lacked authority to sentence defendant consecutively. We further reject the prosecution's and the dissent's invitation to ignore our established precedent by expanding the sources of information that an appellate court may consider when assessing the legality of consecutive sentences where the defendant has pleaded guilty.III.
A.
Penal Law § 70.25 (2) mandates concurrent sentences "for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other." The Court has explained this binary requirement as prohibiting consecutive sentences "where a single act constitutes two offenses, or . . . a single act constitutes one of the offenses and a material element of the other" (Laureano, 87 NY2d at 643). Where consecutive sentences are permissible, a trial court nonetheless retains discretion to impose concurrent sentences (see People v McKnight, 16 NY3d 43, 48 [2010]; People v Couser, 28 NY3d 368, 377 n 4 [2016]).
The prosecution has the burden of establishing the legality of consecutive sentences (People v Rosas, 8 NY3d 493, 496 [2007], citing Laureano, 87 NY2d at 643; see also People v Day, 73 NY2d 208, 211 [1989] ["The defendant benefits if either prong (of Penal Law § 70.25 [2]) is present, and the prosecution's burden is to countermand both prongs"]), and it must satisfy its burden "by identifying the facts which support [its] view" (Laureano, 87 NY2d at 644; see also People v Ramirez, 89 NY2d 444, 451 [1996] ["Imposition of consecutive sentences (based on separate and distinct acts) must be supported by identifiable facts"]; People v Dean, 8 NY3d 929, 930-931 [2007] ["A trial court may impose consecutive sentences when the facts demonstrate that the defendant's acts underlying the crimes are separate and distinct" (internal quotation marks and citation omitted)]). An appellate court reviewing the legality of consecutive sentencing "must first examine the statutory definitions of the crimes for which [the] defendant has been convicted" and compare the actus reus elements of each to determine if they are, "by definition, the same for both offenses . . . , or if the actus reus for one offense is . . . a material element of the second offense" (see Laureano, 87 NY2d at 643). "If the statutory elements do overlap under either prong of [Penal Law § 70.25 (2)], the [prosecution] may yet establish the legality of consecutive sentencing by showing that the 'acts or omissions' committed by [the] defendant were separate and distinct acts" (id. [internal citations omitted]).
"[W]here [the] defendant has pleaded guilty to one or more counts alleged in the indictment, [the prosecution] may rely on the allegations of those counts as well as the facts adduced at the [plea] allocution[s]," and "[w]here [the] defendant has been convicted upon a plea to a lesser offense than [*4]that charged in the indictment, the [prosecution] may rely only on those facts and circumstances admitted during the plea allocution[s]" (id. at 644, citing People v Griffin, 7 NY2d 511, 515 [1960]). This rule is based on a trial court's limited authority to sentence a defendant only upon a factual finding of guilt by the trier of fact after trial or upon a defendant's admissions during a guilty plea allocution. With respect to the latter, as this Court explained in People v Griffin, when a defendant "plead[s] guilty to any lesser crime than that charged in the indictment," that plea "does not presuppose the truth of the facts pleaded in the indictment" (7 NY2d at 515 [internal quotation marks omitted]). Rather, the "plea only admits the facts stated in the plea [allocution] as constituting the lesser crime" (id.).B.

Defendant pleaded guilty to a reduced charge of first-degree manslaughter for causing the death of S.A., and to the first-degree attempted assault count charged in the indictment for the non-fatal injury of A.T., and the court imposed consecutive sentences. Under our established rule, we may consider the legality of the consecutive sentences based only on the facts defendant admitted at the plea allocution with respect to the manslaughter count, and the facts asserted in the indictment and admitted at the plea allocution with respect to the first-degree assault count pertaining to A.T. (see Laureano, 87 NY2d at 644; see also Dean, 8 NY3d at 931 [sentencing court was "without authority to impose consecutive sentences" where the defendant pleaded guilty to three counts of possessing a sexual performance by a child, but the prosecution "did not include the date and time of each of the allegedly separate acts of downloading the digital images set forth in the indictment, or include such facts in defendant's plea allocution(s)"]).
The prosecution failed to meet its burden of establishing the legality of the consecutive sentences in this case, because defendant did not admit any facts during his guilty plea allocutions, nor were there any allegations in the attempted assault count of the indictment pertaining to A.T., that support the prosecution's claim that he fired separate shots at each victim, causing separate injuries to each. Defendant's conviction for first-degree manslaughter required proof that he caused a person's death (see Penal Law § 125.20 [1]), while his conviction for attempted first-degree assault only required proof that he attempted to cause serious physical injury to a person by means of a deadly weapon or dangerous instrument (see Penal Law §§ 110.00, 120.10 [1]). Defendant admitted during his plea allocution to the manslaughter offense that he caused the death of S.A. "[b]y shooting him with a firearm." Although the prosecution did not need to establish that defendant actually injured A.T. for the attempted assault count, the indictment alleged, and defendant admitted at the plea allocution, that he "attempt[ed] to cause [serious physical] injury by shooting a firearm . . . at [A.T.], causing an injury" (emphasis added). In response to the court's inquiries, the prosecutor stated that the factual allocution on each separate plea was acceptable.
As the statutory actus reus for each crime overlaps, because causing or attempting to cause serious physical injury or death by use of a firearm is required for each, the prosecution was required to establish that defendant's use of a firearm caused the injuries to S.A. and A.T. by "separate and distinct acts" (see Laureano, 87 NY2d at 643). Given the court's questions and defendant's responses, the prosecution could have demonstrated the legality of consecutive sentencing by asking defendant to admit that he separately shot at the two victims, or that separate bullets from his firearm injured each victim. However, neither the plea allocutions nor the allegations supporting the attempted assault count of the indictment pertaining to A.T. contain a factual assertion that defendant separately shot at the two victims, or that each victim's injuries were caused by separate and distinct acts of defendant's use of the firearm. In other words, the prosecution failed to demonstrate that [*5]S.A.'s and A.T.'s respective injuries were not the result of defendant firing a single shot (see People v Brathwaite, 63 NY2d 839, 841, 843 [1984] [holding that consecutive sentencing was lawful because the trial record showed at least nine shots were fired, and "although the two deaths may be said to have occurred in the course of a single extended transaction . . . (,) it was separate 'acts' which caused (each victim's) death( )," given that there was "no contention that it was the firing of the same shot that killed both (victims)"]; McKnight, 16 NY3d at 48-49 [allowing consecutive sentencing where separate shots were fired at both victims but indicating concurrent sentencing would be mandated if the shots that hit one victim were the only shots fired at the other victim]; see also People v Battles, 16 NY3d 54, 59 [2010] [permitting consecutive sentences for crimes committed against three victims whom defendant separately doused with gasoline, but requiring concurrent sentencing with respect to a fourth victim sprayed with gasoline as a result of the dousing of others]).
Contrary to the dissent's assertions, the prosecutor should have been aware at the time of the plea, based on our unambiguous caselaw, that they had the burden of ensuring defendant allocuted to sufficient facts to establish that he separately shot at the two victims or that the victims were injured by separate bullets, in order for consecutive sentencing to be legally authorized. But because the prosecutor failed to satisfy their burden and place on the record the alleged "separate and distinct" acts underlying the two crimes (see Laureano, 87 NY2d at 643, 645), the trial court had no legal authority to impose consecutive sentences in this case.[FN2]IV.
The prosecution argues, and the dissent takes up the charge, that we should adopt a different rule that would allow an appellate court evaluating the legality of consecutive sentences to consider all information available to the trial court. That expansion of the sources the prosecution can rely on to meet its burden, which the prosecution characterizes as a "more flexible" approach, would require overruling decades of well-established precedent, and neither the prosecution nor the dissent provides any basis for upending our jurisprudence in such a fashion (see Section III.A., supra; see also Laureano, 87 NY2d at 644; Dean, 8 NY3d at 931). Indeed, the dissent elides that its approach would require us to expand or amend our existing caselaw. To the extent that the prosecution and the dissent claim the current rule unfairly curtails a sentencing court's discretion to impose consecutive sentences where the defendant accepts a mutually beneficial plea bargain, the Laureano majority implicitly rejected this same argument as raised by the dissent (see 87 NY2d at 645-646; id. at 648-649 [Bellacosa, J., dissenting]).
We decline this invitation to deviate from our precedent. Our existing rule is longstanding, straightforward, well-understood, and lower courts have applied it consistently (see e.g. People v Pardy, 113 AD3d 1003, 1003 [3d Dept 2014]; People v Pena, 259 AD2d 394, 394-395 [1st Dept 1999]; People v Robinson, 178 AD3d 861, 862 [2d Dept 2019]; People v Quirk, 73 AD3d 1089, 1090 [2d Dept 2010]; People v Wright, 229 AD3d 1094, 1095 [4th Dept 2024]). The dissent invokes the finality of plea agreements and the importance of presentence reports, all the while disregarding [*6]our substantial body of caselaw making clear that the prosecution bears the burden of proving the legality of consecutive sentencing based on the indictment and plea allocution.[FN3] This rule recognizes that when a defendant pleads guilty, they must admit to the facts necessary for a sentence to be "legal," meaning a sentence that comports with the law and falls within the statutory range for the crime of conviction. Thus, when a court assesses the legality of consecutive sentencing upon a guilty plea, the court cannot go beyond the defendant's admissions and consider information used to impose a sentence that is "appropriate" within those legal limits.[FN4] The dissent's post-plea material of choice—the presentence report—is an especially problematic document by which to determine the legality of a sentence, as the report may contain unverified hearsay.
Furthermore, despite the dissent's and the prosecution's contentions, our rule does not impose an undue burden on the prosecution to establish the legality of consecutive sentencing in cases where a defendant pleads guilty. Prosecutors regularly draft indictments, and they may request further inquiry of a defendant before the court accepts a plea to ensure the adequacy of the allocution and record.[FN5] Defendant's case illustrates the point. In response to the court's inquiry as to whether the allocutions were acceptable, the prosecutor needed only request that defendant admit he separately shot at the two victims or that their distinct injuries were caused by separate shots from his firearm. Thus, under our existing rule the prosecution could easily have established the legality of consecutive sentencing with a question or two, and there can be no excuse for their failure to do so.
In sum, the trial court could not lawfully impose consecutive sentences in this case. The prosecution did not request before the Appellate Division, nor before us, that the matter be remitted for it to withdraw its consent to the pleas, and therefore, as the Appellate Division ordered below, defendant's sentences must be run concurrently. Accordingly, the Appellate Division order insofar as appealed from should be affirmed.

SINGAS, J. (dissenting):

On a Friday afternoon in May 2021, S.A., a hardworking husband and father of three young children, was walking to work when he stopped to speak to friends on a residential Albany street corner. Within minutes, defendant and his accomplices approached the corner in a red Subaru, aimed their loaded guns outside the windows, and fired a barrage of bullets at the group from their moving car. S.A. was struck in the torso and died at the hospital. A.T. was shot and survived after undergoing emergency surgery. Three additional victims were also shot and injured. A grand jury indicted defendant on seven felony counts, including second-degree murder, for which he faced a life sentence (see Penal Law §§ 70.00 [2] [a]; 125.25 [1]-[2]). More than a year later, defendant negotiated a favorable plea deal and—avoiding a life sentence—pleaded guilty to the first-degree [*7]manslaughter of S.A. and first-degree attempted assault of A.T. As part of the negotiated plea the court sentenced defendant to 35 years in prison: 25 years for the manslaughter and 10 years for the attempted assault, to run consecutively in accordance with the plea agreement. Defendant also waived his right to appeal.
The majority now holds that because defendant's allocution did not explicitly state that more than one bullet was fired at the victims, or because it was not evident that one bullet did not strike both victims, defendant is entitled to a 10-year reduction of his negotiated sentence. The possibility of withdrawing from the plea agreement at this stage does not prevent the damage that has been done, because the People's ability to secure a conviction has significantly diminished. Almost five years after the shooting, the People's case has weakened: memories have faded, avenues of investigation have dried up, and victims have moved on. Permitting defendant to leverage the case-degrading effect of time after inducing the People's reliance upon the plea deal, the majority, based on an unreasonable reading of the indictment and plea allocution and a myopic interpretation of our caselaw, rewards defendant's gamesmanship with the windfall of a 10-year reduction to his voluntarily negotiated sentence. That outcome is not only unsound, but fundamentally unfair.I.

During the plea hearing, defendant admitted that he, acting in concert with others, "with the intent to cause serious physical injury to another person, cause[d] the death of [S.A.] by shooting him with a firearm." Defendant further admitted to attempting to cause serious physical injury to A.T., "by shooting a firearm . . . at [A.T.] causing an injury." A reasonable view of this exchange leads to the commonsense conclusion that by fatally shooting S.A. and shooting A.T., defendant committed two separate acts. Instead, the majority bases its holding on the possibility that one bullet could have struck both victims, reasoning that neither the indictment nor defendant's allocution confirms the uncontested fact that multiple bullets were fired (see majority op at 8-9). That reading ignores the undisputed facts of this case. Sure, a magic bullet theory is possible, but the People proved, through any reasonable reading of the allocution, that separate shots were fired; they should not also have to disprove every conceivable law-school hypothetical during an allocution.[FN1] Indictments and allocutions rarely spell out the obvious with such granularity. I would therefore conclude that the People discharged their burden to show what nobody ever contested: in committing this mass shooting, defendant pulled the trigger multiple times.[FN2]
The majority faults the People for not asking defendant to "admit he separately shot at the two victims or that their distinct injuries were caused by separate shots from his firearm" (majority op at 13), apparently either requiring that defendant allocute that he pulled the trigger multiple times, [*8]or that different bullets struck the victims. To the extent it is the latter, that requirement would in effect foreclose consecutive sentencing under these circumstances, because a defendant in a drive-by shooting could not possibly know which bullet struck whom and the People are unlikely to be able to rule out magic bullet theories without expert ballistics analysis. One of plea bargaining's key functions is to bypass the parties' need to marshal such evidence for trial, conserving prosecutorial and judicial resources and rewarding defendants with more lenient sentences in exchange. An overly rigid approach to assessing whether indictments and plea allocutions establish that two crimes involved separate acts undermines that salutary process and may deprive defendants of beneficial bargains.II.

Even if there were any ambiguity in the plea colloquy, defendant's presentence report sufficiently shows that he and his accomplice sprayed 16 bullets at the victims from a moving car, thus adequately demonstrating that A.T. and S.A. were struck by different bullets (see People v Brathwaite, 63 NY2d 839, 843 [1984]; People v Moon, 119 AD3d 1293, 1295 [3d Dept 2014, Stein, J.P.]; People v Holmes, 92 AD3d 957, 957 [2d Dept 2012]; Cruz v Raymond, 2013 WL 5530641, *7, 2013 US Dist LEXIS 144069, *18-20 [ED NY Sept. 30, 2013, No 10-CV-1491 (DLI)] [applying New York law]). The majority rejects the presentence report's help, broadly concluding that sentencing courts are limited to the accusatory instrument and plea allocution (see majority op at 7, 12) and that allowing sentencing courts to "consider all information available to the trial court . . . would require overruling decades of well-established precedent" (majority op at 10). But allowing courts to consider presentence reports specifically, in view of their contents, function, and status, does not in fact require that radical step. I instead agree with Justice Egan's thoughtful dissent that the sentencing court was permitted, and indeed required, to consider this specific document, which is uniquely created by statutory mandate for purposes of sentencing, when determining defendant's permissible sentence (238 AD3d 1212, 1216-1219 [3d Dept 2025, Egan, J.P., concurring in part and dissenting in part]).
"[T]he sentencing decision is a matter committed to the exercise of the court's discretion[,] and . . . it can be made only after careful consideration of all facts available at the time of sentencing" (People v Farrar, 52 NY2d 302, 305 [1981]). As the U.S. Supreme Court has explained, consecutive sentencing is "a sentencing function in which the jury traditionally played no part"; and in states that, like ours, "provide for judicial discretion, but constrain its exercise" in the consecutive sentencing context, judges often permissibly "make certain predicate factfindings" (Oregon v Ice, 555 US 160, 163, 164 & n 3 [2009]). Accordingly, "[s]entencing courts, in the exercise of their unique judicial function in criminal proceedings, are wisely allocated wide latitude . . . . It is therefore consistent and compatible with that overarching principle for this [C]ourt to interpret circumspectly a statute which delimits . . . what a sentencing Judge can appropriately do" (People v Day, 73 NY2d 208, 212 [1989]).
"The presentence report may well be 'the single most important document at both the sentencing and correctional levels of the criminal process' " (People v Hicks, 98 NY2d 185, 189 [2002]). In 1970, the CPL "codifie[d] the virtually uniform practice" of considering pre-sentence reports "before imposing sentence for a felony" (Staff Comment of Temp St Commn on Rev of Penal Law & Crim Code, 1967 Proposed NY CPL 200.20 at 261) and "strengthen[ed] th[at] policy . . . by clearly prohibiting sentence [for a felony] without a presentence report" People v Aiss, 29 NY2d 403, 406 [1972]; see also CPL 390.20 [1], 390.30 [1] [presentence reports must describe "the circumstances attending the commission of the offense"]). Acknowledging this policy in People [*9]v Selikoff, we explained: "To enable the court to perform its function, the statute mandates, and it is the public policy of this State to require, a presentence report before sentence be imposed . . . . A Judge may not ignore those provisions of law designed to assure that an appropriate sentence is imposed" (35 NY2d 227, 238 [1974]; see e.g. People v Breaux, 24 AD3d 261, 262 [1st Dept 2005]; People v O'Dell, 105 AD2d 987, 987 [3d Dept 1984]). Although the majority distinguishes the People's burden to demonstrate the legality of the sentence from the sentencing court's exercise of discretion in imposing an appropriate sentence (see majority op at 11-12), it does not necessarily follow that presentence reports can inform only the latter inquiry. Indeed, we went on to explain in Selikoff that "any sentence 'promise' at the time of plea is, as a matter of law and strong public policy, conditioned upon its being lawful and appropriate in light of the subsequent presentence report or information obtained from other reliable sources" (35 NY2d at 238 [emphasis added]). The sentencing court here was therefore required to consider the presentence report to ensure that consecutive sentencing was lawful and appropriate.
As the majority observes (see majority op at 7-8), we have previously limited sentencing courts to considering accusatory instruments and plea allocutions in assessing the legality of consecutive sentencing (see People v Dean, 8 NY3d 929, 931 [2007]; People v Taveras, 12 NY3d 21, 26 n 1 [2009]).[FN3] Yet we have never applied that rule to specifically exclude presentence reports. Given presentencing reports' unique nature, and given that a case cannot be moved to sentencing until a court reviews the presentence report, it defies logic to now mandate that in determining a defendant's permissible sentence, a court must blind itself to the information in the report that it was required to review. Nor would I conclude that a presentence report cannot be considered because it contains facts not found by a jury or admitted by the defendant (see majority op at 12). That logic is at odds with our approach in cases concerning sentences imposed after a trial, where we permit the People to demonstrate the sentence's legality by "offer[ing] facts from the trial record" (Laureano, 87 NY2d at 644). In any case, as Justice Egan noted below, unlike with other materials in the record, there is a procedure for defendants to contest allegations in the presentence report, and a defendant necessarily admits the report's contents to which they raise no objection (see 238 AD3d at 1218 [Egan, J.P., concurring in part and dissenting in part], citing CPL 400.10). That is the case here, where after successfully striking one paragraph from the presentence report, defendant affirmed that he had no further objection to its contents. Finally, to the extent the majority invokes the sentencing court's "limited authority to sentence a defendant" based on Sixth Amendment concerns (see majority op at 7), the Supreme Court has specifically held that jury trial rights do not attach in the consecutive sentencing context (see Ice, 555 US at 164). In sum, there is no good reason to tie [*10]sentencing courts' hands by prohibiting them from considering a document created specifically for sentencing purposes when determining the legality of a sentence.[FN4]III.

We have long recognized the need for "rigorous adherence by the courts to a policy of affording guilty pleas a great measure of finality . . . [to] immunize plea negotiations from indiscriminate potshots" (People v Frederick, 45 NY2d 520, 525 [1978]). "A plea of guilty, as we have repeatedly observed, generally marks the end of a criminal case, not a gateway to further litigation" (People v Konieczny, 2 NY3d 569, 572 [2004], quoting People v Hansen, 95 NY2d 227, 230 [2000]). Guilty pleas thus enable the parties, "by mutual concessions, . . . [to] obtain a prompt resolution of criminal proceedings with all the benefits that enure from final disposition" (People v Seaberg, 74 NY2d 1, 7 [1989]), including by furthering "the very real interest of the State in achieving finality" (People v Delorbe, 35 NY3d 112, 119 [2020], quoting People v Lopez, 71 NY2d 662, 665 [1988]; see e.g. People v Bradshaw, 18 NY3d 257, 264 [2011]; People v Avery, 85 NY2d 503, 506 [1995]). Plea agreements "relieve the prosecution and the defense . . . from 'the inevitable risks and uncertainties of trial,' " "start[ ] the offender on the road to possible rehabilitation," and "enable[ ] the court to impose 'individualized' sentences . . . by avoiding mandatory, harsh sentences" (Selikoff, 35 NY2d at 232-234).
Defendants frequently benefit from plea deals that are "illegal" in the sense that they are unsupported by the evidence. Indeed, "we have recognized that a defendant can plead guilty to a nonexistent or legally impossible offense in satisfaction of an indictment that charges a higher offense" (People v Tiger, 32 NY3d 91, 101 [2018] [emphasis added]; see Griffin, 7 NY2d at 516-517). We allow this ubiquitous practice because the "almost universally used[ ] discretion by prosecutors and courts in accepting lesser pleas . . . is sometimes a finer adjustment to the particular crime and offender than the straight application of the rules of law would permit" (Selikoff, 35 NY2d at 234). Allowing parties to utilize these tools to arrive at agreed-upon sentences inures to defendants' benefit by facilitating more lenient sentencing.
We readily endorse the practice of defendants pleading guilty to impossible or nonexistent crimes even though, in those circumstances, a defendant's allocution is not only deficient, it is based on a legal fiction, and, most significantly for our purposes here, "no factual basis for the plea is required" (People v Johnson, 23 NY3d 973, 975 [2014]). We allow such pleas to facilitate the plea-bargaining process; so why invalidate the mutually beneficial plea here—to real crimes that validly support defendant's bargained-for sentence—based on a hyper-technical reading? After all, defendant admitted guilt to manslaughter rather than murder, avoiding a life sentence; one count of [*11]attempted assault rather than four, avoiding possible consecutive sentences on those counts; and avoided any conviction of criminal possession of a weapon.[FN5] The majority contends that defendant's 35-year sentence would have been legal if the People had simply had defendant allocute to one additional fact. That contention equally demonstrates that any supposed deficiency in the allocution could have easily been cured if the sentencing court or the People were alerted to it. In theory, the People could seek to remedy that problem by withdrawing from the plea agreement. But they do not seek that remedy here because, as the People acknowledged in briefing, the years that passed between the original trial date and when the defendant's appeal was heard have weakened the People's ability to secure a conviction at trial.
Rewarding defendant with a 10-year windfall sentence reduction under these circumstances will only serve to erode both public confidence in the criminal justice system and the People's confidence that plea agreements like defendant's will be honored moving forward. It is not hard to imagine the reaction of the victims, their families, and the community to today's decision. And the People will now undoubtedly think twice before negotiating pleas subject to hyper-technical challenges manufactured on appeal by defendants seeking to avoid the bargain. That will further burden the People and the courts, and will harm defendants too.
I dissent.
Order insofar as appealed from affirmed. Opinion by Judge Rivera. Chief Judge Wilson and Judges Cannataro, Troutman and Halligan concur. Judge Singas dissents in an opinion, in which Judge Garcia concurs.
Decided March 19, 2026

Footnotes

Footnote 1: It appears the prosecution also claims that the sentence is not "per se unlawful," in part, because defendant agreed to consecutive sentences and thus defendant has waived his argument that it was possible the victims were struck by a single bullet. The prosecution conflates the concept of waiver with its preservation argument. Defendant asserts that the sentences could not lawfully run consecutively. As we explain, that challenge does not require preservation and is not rendered meritless or waived because defendant agreed to consecutive sentences (see Section II.).

Footnote 2: By stating that the prosecution "should not . . . have to disprove every conceivable law-school hypothetical during an allocution," the dissent reveals that it misunderstands the prosecution's burden in this case (see dissenting op at 3; see also id. at 3 n 1). The prosecutor did not have to disprove anything; rather, they had to prove only one thing—separate acts—and contrary to the dissent's assertions, failed to do so.

Footnote 3: The dissent's litany of supposed harms caused by our refusal to cast aside precedent is hyperbole. Addressing each in turn, first, here, we do no more than reaffirm a decades-old rule grounded on a trial court's lack of authority to impose an illegal sentence. Second, the dissent's analogy to guilty pleas to nonexistent or legally impossible crimes in satisfaction of an indictment that charges a higher offense is wholly inapt (see dissenting op at 9-10). Although our precedent instructs that when a defendant pleads guilty to a lesser included offense, the plea allocution is not required to establish a factual basis for the lesser crime (see People v Clairborne, 29 NY2d 950, 951 [1972]), the question at issue in this case is whether the indictment and allocution support consecutive sentences, and for the reasons we have explained (see Section III.B., supra), the record in this case fails to provide a legal basis for consecutive sentencing. Finally, to the extent the dissent suggests these "harms" will cause prosecutors to "undoubtedly think twice before negotiating pleas subject to hyper-technical challenges manufactured on appeal by defendants seeking to avoid the bargain" (see dissenting op at 11-12), they should think twice, but about how to preserve a record that supports consecutive sentencing, not how to change the rule to excuse such failure.
Footnote 4: Put another way, an appropriate sentence must always be lawful in the first instance. That is why this Court has explained that "any sentence 'promise' at the time of plea is, as a matter of law and strong public policy, conditioned upon its being lawful and appropriate in light of the subsequent presentence report" (see People v Selikoff, 35 NY2d 227, 238 [1974]). Indeed, as even the dissent notes (see dissenting op at 6), we have described the CPL 390.20 (1) requirement that a sentencing court consider a presentence report in felony cases as "designed to assure that an appropriate sentence is imposed" (see Selikoff, 35 NY2d at 238 [emphasis added]). We have never, however, expanded the sources that the prosecution can rely on to establish the legality of consecutive sentencing in the case of a plea to include the presentence report. The dissent ignores the jurisprudence of our Court explaining why we only look to the allegations in the counts of the indictment pleaded to and the plea allocutions to establish what the defendant pleads, and, in turn, the basis for the lawful sentence (see Laureano, 87 NY2d at 644-645; Griffin, 7 NY2d at 515-517). If the indictment and allocutions do not support the defendant's guilt of the crime pleaded to, then no sentence can be imposed, regardless of what the presentence report asserts.

Footnote 5: In some cases, trial courts have permitted the prosecution to conduct the factual allocution during the plea proceeding (see e.g. People v Sanders, 25 NY3d 337, 338-340 [2015]). We have no occasion in this appeal to opine on that practice. 

Footnote 1: By casting aside that ordinary inference and concluding instead that there is no support in the record to show separate acts, the majority in effect requires the People to offer up evidence to disprove the single-bullet theory (contra majority op at 10 n 2).

Footnote 2: Our case law does not demand a different outcome (contra majority op at 7-9), as we have never confronted the shooting of two separate victims in this context. For example, People v Laureano concluded that "no facts" demonstrated that separate acts accomplished a robbery and homicide against the same victim (see 87 NY2d 640, 645 [1996]). In People v McKnight, we pointed to trial "testimony of the ballistics expert and the medical examiner" showing that two victims were struck by different bullets (16 NY3d 43, 49 [2010]). We did not hold that such evidence—which is almost never available in cases resolved by guilty plea—is necessary to impose consecutive sentences in that context (see id.).

Footnote 3: The majority also looks to Laureano for this proposition (see majority op at 7). But Laureano merely cited to Griffin's unobjectionable holding that, when imposing a sentence on a defendant who has pleaded guilty, a trial court cannot consider the counts of an indictment to which the defendant has not admitted guilt (see 87 NY2d at 644, citing People v Griffin, 7 NY2d 511, 515 [1960] [noting that when a defendant pleads guilty to a lesser crime not charged in the indictment, "(s)uch a plea does not presuppose the truth of the facts pleaded in the indictment"]; see also People v Moore, 71 NY2d 684 [1988] [an "indictment is not evidence"]). Laureano and Griffin did not hold that a presentence report cannot be considered in determining whether consecutive sentences can be imposed.

Footnote 4: While it is my view that sentencing courts were not prohibited, until today, from considering presentence reports in imposing consecutive sentences, I would reconsider our rule if it prohibited considering this document. We have never before provided any reasoning to explain why sentencing courts should be limited to accusatory instruments and allocutions when imposing consecutive sentences, and the majority's contention that we did so in Griffin and Laureano (see majority op at 12 n 4) reflects its misreading of those cases' reasoning. As explained above, those cases only provide reasoning for the commonsense conclusion that, where a defendant has not admitted to their contents, indictments are not evidence (see supra 7 n 3). The majority's general gesture to "a trial court's limited authority to sentence a defendant" (majority op at 7) does not persuasively fill that gap in reasoning.

Footnote 5: Fact-bound sentencing challenges are typically subject to preservation requirements (see People v Nieves, 2 NY3d 310, 316 [2004] ["challenges to the court's procedures, evidentiary disputes and claims that rely on documents or facts not otherwise developed in the record must be preserved by timely objection in the sentencing court"]; see also e.g. People v Samms, 95 NY2d 52, 56-57 [2000]). Requiring preservation avoids "unnecessary surprise" (People v Allen, 24 NY3d 441, 449 [2014]) and "gives the parties an essential opportunity to probe relevant factual and legal issues, thereby ensuring that the record before this Court reflects a full airing of the points that bear upon an ultimate merits determination" (People v Cabrera, 41 NY3d 35, 43 [2023]). That logic surely applies here. Although we have previously indicated that challenges like defendant's survive guilty pleas because they fall under the illegal sentence exception (see Laureano, 87 NY2d at 643; majority op at 4-5), to the extent that this holding extends to the preservation context, cases like this demonstrate the necessity of preservation in these circumstances. But because I would hold that the People have discharged their burden to show that these crimes involved separate and distinct acts, I need not decide whether we should take up the People's proposal to reexamine our precedent in this area.